## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02989-DDD-MEH

JAMES HUNTER,

      Plaintiff,

v.

ALEXIS KING, District Attorney for the First Judicial District, in her official capacity, et al.,

      Defendants.

---

## FIRST JUDICIAL DISTRICT ATTORNEY ALEXIS KING AND JEFFERSON COUNTY SHERIFF REGINA MARINELLI'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF 2]

---

Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), First Judicial District Attorney Alexis King and Jefferson County Sheriff Regina Marinelli (the "District Attorney" and the "Sheriff", respectively; collectively, "County Defendants")[1] move to be dismissed from the Complaint [ECF 2].[2]

### BACKGROUND

Nearly 22 years ago, the Lakewood Police Department arrested Mr. Hunter and charged him with various felony crimes, all of which a jury ultimately convicted him. (ECF 2, ¶¶ 15-16); *see also* Jefferson County Court Case 2002CR3254 Docket Report.[3] Following his 2004

---

[1] The Sheriff was not involved in Mr. Hunter's prosecution, nor was her office the investigating law enforcement agency.

[2] Although D.C.COLO.LCIVR 7.1 exempts this filing from the obligation to confer, undersigned counsel conferred with Mr. Hunter's counsel in the spirit of DDD CIV. P.S. III(D).

[3] Mr. Hunter was convicted of multiple felonies, including burglary and sexual assault.

The County Defendants request that the Court take judicial notice of the docket report in Jefferson County District Court Case 2002CR3254 and of the Colorado Court of Appeals'

1

conviction, Mr. Hunter pursued a series of appeals in Colorado's state courts. Most recently, the

Colorado Court of Appeals affirmed the state trial court's order denying Mr. Hunter's petition for

new DNA testing. *People v. Hunter*, 20CA0993 (Colo. App. Jan 27, 2022) (unpublished) ("COA

Op."). In May 2022, the Colorado Supreme Court declined to review that decision. (ECF 2, ¶

42.) Mr. Hunter's criminal convictions stand. (*Id*. ¶ 16.)

Mr. Hunter then filed this action, seeking this Court's declaration that the named

Defendants have violated his due process rights, as well as an order to preserve and provide Mr.

Hunter with access to certain evidence for DNA testing. Mr. Hunter brings a single due process

claim and alleges that the County Defendants, among others, conspired with unnamed

individuals to prevent DNA sample testing. (*Id*. ¶¶ 5, 7, 46-63.) The Complaint is otherwise

devoid of allegations against the County Defendants. Critically, Mr. Hunter does not allege the

County Defendants personally participated in any alleged constitutional violation or that those

alleged violations were a result of their policies or customs. (*See id*.) Nor does he identify any

facts to support their involvement in a conspiracy or otherwise show a due process claim against

them.

---

January 27, 2022 Opinion affirming the state trial court's denial of Mr. Hunter's petition for new DNA testing (**Exhibits A** and **B**). The Opinion summarizes Mr. Hunter's state criminal proceedings, which include Court of Appeals Cases 2004CA699, 2008CA316, 2017CA2112, and 2020CA993, and Colorado Supreme Court Cases 2010SC146, 2019SC411, and 2022SC220 (denying certiorari on Case 2020CA993). Per Fed. R. Evid. 201, a court "may take judicial notice of undisputed court documents and matters of public record as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hansen v. Harper Excavating, Inc*., 641 F.3d 1216, 1219, n.2 (10th Cir. 2011) (citation omitted) (under Fed. R. Evid. 201, judicial notice may be taken "at any stage of the proceeding"). This rule applies to the taking of judicial notice of filings in related cases "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). Given that Mr. Hunter challenges his state court criminal conviction, the court records associated with that conviction directly relate to his claims here and the Court's consideration of them does not convert this motion into one for summary judgment.

The Court should dismiss the Sheriff from this action because the Sheriff's Office was not the law enforcement agency responsible for investigating or arresting Mr. Hunter, and it is not, and has never been, the custodian of any associated DNA evidence. The District Attorney likewise is not, and has never been, the custodian of such evidence. Moreover, *Heck v. Humphrey*, 512 U.S. 477, 478 (1994), the Rooker-Feldman Doctrine, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldma*n, 460 U.S. 462 (1983), and res judicata bar Mr. Hunter's claims against the County Defendants. Finally, Mr. Hunter has failed to allege sufficient facts to show a conspiracy or any policy or custom of the County Defendants that would give rise to official-capacity liability.

## STANDARD OF REVIEW

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. A plaintiff bears the burden of establishing subject matter jurisdiction. *See Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Such challenges assume two forms. First, the moving party may mount a "facial attack" that challenges the complaint's allegations as to the "existence of subject matter jurisdiction." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). When a party mounts a facial attack, courts must accept a complaint's allegations as true. *See Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995). Second, a party may go beyond the complaint's allegations by presenting evidence challenging the factual basis upon which subject matter jurisdiction rests." *Id.* (citation omitted).

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's

allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). Nor, in this context, does "[p]lausible" mean "likely to be true;" rather, plausibility "must refer to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ARGUMENT

**I.    THIS COURT LACKS JURISDICTION OVER CLAIMS AGAINST THE COUNTY DEFENDANTS UNDER THE *ROOKER-FELDMAN* DOCTRINE.**

The Rooker-Feldman doctrine precludes federal court review of a direct challenge to a state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 531-33 (2011); *Dawson v. Suthers*, No. 14-CV-01919-MSK-NYW, 2015 WL 5525786 at *4 (D. Colo. Sept. 21, 2015) (unpublished). The Rooker-Feldman doctrine applies to cases where "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." *Skinner*, 562 U.S. at 531 (footnote omitted). *See Segler v. Ross Mgmt. Group, Inc.,* 485 F. App'x 980, (10th Cir. 2012) ("The *Rooker–Feldman* doctrine generally denies federal courts jurisdiction to adjudicate claims seeking the review of state court judgments.") (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004) (Easterbrook, J.) ("We now hold that the right

disposition, when the Rooker–Feldman doctrine applies, is an order under FED. R. CIV. P.

12(b)(1) dismissing the suit for lack of subject-matter jurisdiction.")).

Most recently, Mr. Hunter asked the state courts to order "new DNA testing" because "a

piece of DNA evidence used to convict him was 'highly suspect due to [a] break in the chain-of

custody' and was 'unconvincing in light of advances in DNA technology.'" COA Op. ¶ 10. He

argued that the new DNA testing would exclude him as the perpetrator of the crimes.

> In affirming the state district court's denial, the Court of Appeals held:
>
> Hunter didn't adequately plead that favorable DNA testing would demonstrate his actual innocence. Although he speculates that new DNA testing could establish that the prior testing of one of the samples (which supposedly had been contaminated during a break in the chain of custody) resulted in a false positive, that still wouldn't negate the other sample from the scene that also matched his DNA profile. Nor would it negate the other evidence that supported the jury's verdict—including, in particular, evidence that he was in the vicinity of the crime scene at the time of the crimes, that his body size and features matched those of the perpetrator, that he was wearing clothes that fit the description of those worn by the perpetrator, and that the adult victim recognized his voice.
>
> Thus, additional testing would not demonstrate actual innocence, as it would not provide clear and convincing evidence such that no reasonable juror would have convicted Hunter of the crimes.
>
> Additionally, . . .Hunter didn't allege that conclusive DNA results were not available prior to his conviction. He alleged only that one of the two DNA samples that was presented at trial was contaminated and that additional testing with newer technology might show it didn't match his DNA profile. In reviewing Hunter's Crim. P. 35(c) appeal, a division of this court has already rejected his argument that the DNA evidence presented at trial wasn't conclusive. His challenges to the sufficiency and admissibility of that evidence, which the trial court and divisions of this court have rejected multiple times, don't satisfy his burden under section 18-1-413(1)(c)(I).

*Id*. ¶¶ 28-30.

In essence, Mr. Hunter now brings a federal court challenge to the state court

determination that he is not entitled to further DNA testing. Although couched as a due process

violation, he is not challenging the facial constitutionality of any state statute regarding DNA

testing—nor would the County Defendants be the proper defendants for such a claim. Instead, he

argues that the lack of additional testing in his case violates due process.

Other courts in this circuit have rejected similar arguments. For example, the Northern

District of Oklahoma held that the Rooker-Feldman doctrine barred an attempt to compel DNA

testing:

> To the extent plaintiff includes these allegations in his complaint to persuade this Court to review and overturn the state court rulings denying his request for relief under the Postconviction DNA Act, his complaint must be dismissed, in part, under the *Rooker-Feldman* doctrine. *Skinner*, 562 U.S. [at 532]; *see also Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 789 (10th Cir. 2008) ("[A] complaint filed in a federal district court that seeks review and reversal of a state-court judgment is properly dismissed under *Rooker-Feldman*."). As previously discussed, the state district court determined that plaintiff failed to make the necessary showings under [the state statutes] to obtain postconviction DNA testing. In this action, plaintiff nevertheless asks this Court to require defendant to provide him access to the same evidentiary items he sought access to through the motion he presented in state court. But the *Rooker-Feldman* doctrine bars "state-court losers" from "inviting district court review and rejection of the state court's judgments." *Skinner*, 562 U.S. at 532. . . .
>
> Thus, to the extent plaintiff urges this Court to review and reverse the state court decisions denying his request for access to certain evidentiary items for DNA testing, *Rooker-Feldman* bars his claim. As a result, the Court finds the complaint must be dismissed, in part, for lack of subject-matter jurisdiction.

*Huey v. Kunzweiler*, No. 20-CV-0021-CVE-FHM, 2020 WL 1325359, at *4-5 (N.D. Okla. Mar.

20, 2020) (footnote omitted), *aff'd*, 847 F. App'x 530 (10th Cir. 2021); *see also Pickens v.*

*Kunzweiler*, No. 15-CV-504-JHP-PJC, 2016 WL 1651821, at *3 (N.D. Okla. Apr. 25, 2016)

("While the Court may consider challenges to state laws restricting individuals' access to

potentially exculpatory DNA evidence on procedural due process grounds, this Court lacks

subject matter jurisdiction to hear a suit directly challenging a state court's ruling.") (citing

*Skinner*, 562 U.S. at 532).

Here, Mr. Hunter already sought DNA testing in state court. Although he slightly

reframed that relief here to seek an injunction preventing the destruction of DNA evidence, his

6

claim nevertheless fails because he seeks to challenge the state court's ruling. *See Alvarez v. Attorney General for the State of Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012) (Rooker-Feldman doctrine precluded § 1983 claim challenging state courts' resolution of plaintiff's post-conviction applications for DNA testing).

## II.   *HECK* AND RES JUDICATA BAR PLAINTIFF'S CLAIMS, AND THEY SHOULD BE DISMISSED UNDER RULE 12(B)(6).

In *Heck v. Humphrey*, the U.S. Supreme Court addressed "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." 512 U.S. 477, 478 (1994). There, plaintiff alleged that state prosecutors and police officers engaged in unlawful acts which led to plaintiff's arrest and ultimate conviction. *Id*. at 479. The Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. If it does, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*.

*Heck* is not limited to § 1983 damage claims; it also applies to declaratory and injunctive relief. *See*, *e.g.*, *Lawson v. Engleman*, 67 F. App'x 524, 526 (10th Cir. 2003) (*Heck* barred claims for declaratory and injunctive relief under §§ 1983 and 1985). "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Where, as here, the

underlying convictions still stand and the state courts have rejected plaintiff's challenges, *Heck* bars DNA evidence claims:

> The district court properly applied the *Heck* doctrine to Payton's claims. As noted, his claims challenge the validity of his rape convictions. Indeed, he requests DNA retesting, release from custody, and release from further prosecution. But his conviction remains intact despite his multiple state and federal challenges. Hence, Payton's § 1983 claims are yet another attempt to attack this conviction.

*Payton v. Ballinger*, 831 F. App'x 898, 901 (10th Cir. 2020) (internal citations omitted).

As in *Payton*, Mr. Hunter has a valid, existing underlying conviction and sentence "tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007). Indeed, the Colorado Court of Appeals denied Mr. Hunter's attempt to secure additional DNA testing, which is essentially the same relief he seeks here. Because Mr. Hunter's criminal convictions remain valid and because a judgment in his favor would necessarily imply the invalidity of those convictions, *Heck* bars his claims. *Payton*, 831 F. App'x at 901; *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003) (holding that *Heck* barred prisoner's § 1983 claim alleging an unlawful search because evidence obtained pursuant to the search led to his convictions); *Baldwin v. O'Connor*, 466 F. App'x 717, 717-18 (10th Cir. 2012) (affirming dismissal under *Heck* of search and seizure claim where no injury alleged other than conviction and imprisonment). Indeed, Mr. Hunter admits as much in his Complaint. (ECF 2, ¶ 55 ("[t]he above identified biological evidence will link the alternative suspect to [the crime] . . . and exonerate Mr. Hunter of any wrongdoing."); ¶¶ 57-59.)

Established res judicata principles also bar Mr. Hunter's claims. *See Nwosun v. General Mills Restaurants*, 124 F.3d 1255, 1257 (10th Cir. 1997) (elements of res judicata); *Bravo-Fernandez v. U.S.*, 580 U.S. 5, 11 n.2 (2016) (describing res judicata as "embrac[ing] both claim and issue preclusion). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287

(2005), the Supreme Court held that the Rooker-Feldman doctrine complements the preclusion

doctrine because it bars a losing party in state court from seeking what in substance would be

appellate review of the state judgment in a federal district court that is based on the losing party's

claim that the state judgment itself violates the loser's federal rights.

Here, the Colorado Court of Appeals denied essentially the same relief Mr. Hunter now

seeks from this Court: additional DNA evidence testing. Rather than relitigated in federal court,

those failed claims should be dismissed.

### III.    MR. HUNTER HAS NOT ALLEGED FACTS PLAUSIBLY SHOWING A DUE PROCESS CONSPIRACY CLAIM.

### A.    The Complaint Does Not Plausibly Allege a Conspiracy.

The sole basis of the constitutional claims against the County Defendants is their alleged

involvement in a conspiracy to prevent DNA sample testing. (ECF 2, ¶¶ 5, 7.) Mr. Hunter has not

alleged facts plausibly showing a conspiracy claim.

The elements for a § 1983 conspiracy claim are: "(1) a shared conspiratorial objective

(the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action

by the Defendants; and (3) an actual deprivation of rights." *Snell v. Tunnell,* 920 F.2d 673, 702

(10th Cir. 1990). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983

claim." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1994). As the Supreme

Court held in *Twombly*:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Twombly,* 550 U.S. at 556-57.

Thus, to state a claim for conspiracy under § 1983, a plaintiff must "allege specific facts showing agreement and concerted action among defendants." *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir. 1989). "[A]n allegation of parallel conduct absent context implying a meeting of the minds" is, by itself, insufficient to withstand a motion to dismiss." *Gee v. Pacheco,* 627 F.3d 1178, 1183 (10th Cir. 2010); *see also Afola v. Corr. Corp. of Am.*, No. 12CV02394-JLK, 2013 WL 2477126, at *4 (D. Colo. June 10, 2013) (citing *id.*).

Here, Mr. Hunter has failed to plausibly allege a conspiracy claim. Critically, the Complaint lacks any allegations plausibly showing the County Defendants' involvement in a shared conspiratorial objective, concerted action, or an actual deprivation of rights. Nor has Mr. Hunter alleged facts showing their actual participation in a conspiracy. This failure requires that the Court dismiss the claims against the County Defendants.

**B.     Plaintiff Has Not Pleaded Facts Showing A Due Process Violation.**

To show a due process violation, a plaintiff must allege facts showing: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted). Mr. Hunter has not alleged facts plausibly showing either element. While he has been deprived of his liberty, he has alleged no facts plausibly showing that that deprivation was a result of the County Defendants' unconstitutional actions. And, as explained above, Mr. Hunter has received all process he was due during his trial, direct appeals, and collateral attacks on his convictions in state court.

As the *Reed* Court noted:

> This Court's case law "severely limits the federal action a state prisoner may bring for DNA testing." *Skinner*[], 562 U.S. [at] 525. The Court has "rejected the extension of substantive due process to this area, and left slim room for the prisoner to show that the governing state law denies him procedural due process." *Ibid.* (citation omitted); *see District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69, 72, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009).

10

598 U.S. at 235. The *Reed* Court allowed the case to proceed because the petitioner was challenging the constitutionality of a state statute itself. *See id.*

Here, Mr. Hunter seeks to have this Court overrule the state courts by ordering state defendants to preserve and allow testing of DNA evidence. He has not taken the appropriate steps, or sued the proper defendants, to challenge the constitutionality of the statute. His claims against the County Defendants should be dismissed.

### C.    Plaintiff Fails To State A Claim For Municipal Liability.

Finally, the Court should dismiss the County Defendants because the Complaint fails to allege a plausible municipal liability claim. Here, Mr. Hunter has sued the County Defendants in their official capacities only. "The Supreme Court has instructed that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Coates v. Reigenborn*, No. 22-1339, 2023 WL 6810961, at *3 (10th Cir. Oct. 16, 2023) (punctuation omitted; quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Government entities can be sued only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694.

Under such a theory, a plaintiff must establish: (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider*, 717 F.3d at 769 (citation omitted); *see also Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (for municipal liability requires a

11

plaintiff to (1) "identify a government's policy or custom" and (2) "show 'that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'" (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013))); *Leonhard v. Correct Care Sols., LLC*, No. 19-cv-00600-PAB-STV, 2020 WL 1694377, at *8 (D. Colo. Apr. 7, 2020) (to raise a *Monell* claim, "a plaintiff should [identify and] set out the text of that policy") (citing *Sandberg v. Englewood*, 727 F. App'x 950, 964 (10th Cir. 2018)).

A plaintiff may show the existence of a policy or custom by showing the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation, alteration omitted). Moreover, to succeed, a plaintiff must identify a particular theory of municipal liability and cannot rely on a hybrid theory. *Cacioppo*, 528 F. App'x at 934 (declining to recognize "amorphous hybrid theory" of municipal liability).

Here, Mr. Hunter fails to establish any of the elements of a *Monell* claim. He fails to make even conclusory allegations identifying a policy or custom of the District Attorney or Sheriff. Because he cannot identify such a policy, he cannot show causation. And he makes no allegations whatsoever regarding the County Defendants' states of mind. His claims should be dismissed.

## CONCLUSION

For the reasons set forth above, this Court should dismiss the County Defendants pursuant to Rule 12(b)(1) and 12(b)(6).

Respectfully submitted this 19th day of January, 2024.

JEFFERSON COUNTY ATTORNEY'S OFFICE

 /s/Rebecca P. Klymkowsky
Rebecca P. Klymkowsky
Assistant Deputy County Attorney
Amy L. Padden
Assistant County Attorney
100 Jefferson County Attorney's Office
Golden, Colorado 80419
T: 303.271.8900
E: rklymkow@jeffco.us
E: apadden@jeffco.us
*Attorneys for the District Attorney and the Sheriff*

      Pursuant to DDD Civ. P.S. III(A)(1) and (A)(4), I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Court's Practice Standards that it contains no more than 4,000 words.

 /s/ Rebecca P. Klymkowsky
Rebecca P. Klymkowsky

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2024, a copy of the foregoing was filed via ECF and served electronically on all counsel of record.

*/s/ Rebecca P. Klymkowsky*
Rebecca P. Klymkowsky
