IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02989

JAMES HUNTER,

     **Plaintiff,**

v.

ALEXIS KING District Attorney for the 1 st Judicial District, in her official
    capacity.

CHRIS SCHAFFER, Director of the Colorado Bureau of Investigation, in his
    official capacity,

REGGIE MARINELLI, Sheriff of the Jefferson County Sheriff's Department, in his official
    capacity,

~~KEVIN FISHER, Chief of Police for the Lakewood Police Department, in his individual~~
    ~~capacity,~~

~~STEVEN JENSON Former Deputy District Attorney for the Jefferson County District Attorney's~~
    ~~office, in his individual capacity,~~

<u>CHIEF SMITH, Chief of Police for the Lakewood Police Department, in his official
    capacity; and</u>

YVONNE M. WOODS Officer, laboratory technician of the Colorado Bureau of Investigation, in
    her individual capacity,

~~ALEX JAMESON Former Detective of the Lakewood Police Department, in his individual~~
    ~~capacity,~~

~~RICHARD TEWES Officer of the Lakewood Police Department, in his individual capacity~~

~~PATRICK WILSON, Officer of the Lakewood Police Department, in his individual capacity.~~

    **Defendants.**

## COMPLAINT

---

## INTRODUCTION

1.     The cause of action in this case is the denial of due process, and the request for the fair administration of justice through proper access to evidence and testing that could substantiate the actual and factual innocence of the Plaintiff.    Mr. James Hunter, the Plaintiff, is 64-year-old gentlemen that has maintained his innocence for 21 years. The dynamics of this case meet the quintessential circumstances in which the State of Colorado should yield in the interest of justice and allow Mr. Hunter to have access to DNA and print identification evidence to substantiate his actual and factual innocence.

2.     The record is patently clear that Mr. Hunter was prosecuted and tried based on fabricated and false evidence. This action is based on the complete denial of access to evidence that is currently in the Defendants' control that will substantiate Mr. Hunters actual innocence. Specifically, there are approximately 21 different pieces of evidence, including a rape kit that are in the custody and control of the Defendants and these items have not been tested. None of these items were subjected to advanced scientific testing that was not available 20 years ago but is available today.  There is biological evidence that has never been analyzed that exists and each of the noted pieces of evidence will prove Mr. Hunter's innocence. As such, Mr. Hunter has a due process right to access and test this evidence.

3.     An immediate threat exists that the Defendants will destroy or alter the subject evidence due to the recent identification of an alternative suspect, who was recently convicted of a similar crime with the same signature used in Mr. Hunter's case. The identification of finger/palm prints that

would have, also, proven Mr. Hunter's innocence has recently disappeared and then reappeared from evidence storage without legal authority or proper accounting of the chain of custody. This threat of destruction of evidence is, upon belief, obviously designed to stonewall any current collateral attack and conceal potential liability for the wrongful conviction of an innocent man. Therefore, the Federal Court should, in the interest of justice, issue an immediate preservation order and, thereafter, issue an order directing the Defendants (herein) to produce all evidence for DNA and print identification testing to allow Mr. Hunter to confirm and substantiate his actual innocence and show an exception to any procedural restriction premised on Mr. Hunter's claim that any procedural claim by the Defendants amounts to a miscarriage of justice exception.

## PARTIES

4.     At all times pertinent to the complaint the Plaintiff James Hunter was a citizen of the United States and resident of the State of Colorado, and currently resides at: 275 Hwy 50, Canon City, CO. 81215.

5.     Defendant Alexis King is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant King was acting under the color of law in her capacity as the District Attorney of the Jefferson County District Attorney's Officer, and currently conducts business at: 500 Jefferson County Parkway, Golden, CO. 80401. Defendant King is the administrative head and official policy maker of the Jefferson County District Attorney's Office and has authority to issue preservation orders with respect to all constitutionally material evidence currently in the custody of all law enforcement agencies in the jurisdiction of Jefferson County. Upon belief, Defendant King is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could

substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant King is being sued in her official capacity.

6.      Defendant Chris Schaffer is a United States citizen and resident of the State of Colorado. At all times relevant to this action, Defendant Schaffer was acting under the color of law in his capacity as the Director of the Colorado Bureau of Investigation ("CBI") , and currently conducts business at: 6000 54th Ave., Arvada, CO. 81002. Defendant Schaffer is the administrative head and official policy maker of CBI and currently has authority to issue a preservation order with respect to all constitutionally material evidence currently in its custody and order the production of this evidence for independent DNA testing by the Defendant's legal team. Upon belief, Defendant Schaffer is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Schaffer is being sued in his official capacity.

7.      Defendant Reggie Marinelli is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Marinelli was acting under the color of law in his capacity as the Sheriff of the Jefferson County Sheriff's Department, and currently conducts business at: 200 Jefferson County Parkway, Golden, CO. 80401. Defendant Marinelli is the administrative head and official policymaker for the Jefferson County Sheriff's Department, and currently has authority to issue a preservation order with respect to all constitutionally material evidence currently in its custody and order the production of this evidence for independent DNA

testing by the Mr. Hunters legal team. Upon belief, Defendant Marinelli is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Marinelli is being sued in his official capacity.

8.      Defendant Chief Smith is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Smith was acting under the color of law in his capacity as the Chief of Police of the Lakewood Police Department, and currently conducts business at: 480 S. Allison Parkway, Lakewood, Colorado 80226. Defendant Smith is the administrative head and official policymaker for the Lakewood Police Department, and currently has authority to issue a preservation order with respect to all constitutionally material evidence currently in its custody and order the production of this evidence for independent DNA testing by the Mr. Hunters legal team. Upon belief, Defendant Smith is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Smith is being sued in his official capacity.

9.      ~~Defendant Kevin Fisher is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Fisher was acting under the color of law in his capacity as the Chief of Police of the Lakewood Police Department, and currently conducts business at: 480 S. Allison Parkway, Lakewood, Colorado 80226. Defendant Fisher is the~~

~~administrative head and official policymaker for the Lakewood Police Department, and currently has authority to issue a preservation order with respect to all constitutionally material evidence currently in its custody and order the production of this evidence for independent DNA testing by the Mr. Hunters legal team. Upon belief, Defendant Fisher is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Fisher is being sued in his official capacity.~~

10.     Defendant Yvonne M. Woods is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Woods was acting under the color of law in her capacity as an officer of CBI, and currently conducts business at: 6000 54th Ave., Arvada, CO. 81002. Defendant Woods was/is employed as a Colorado Bureau of Investigation (CBI) technician working for the state of Colorado. Upon information, Ms. Woods was the lead technician directing the analytical test on hairs and other DNA sources that were used to convict Mr. Hunter and may have custody and control of material evidence that may be tested for DNA. Upon belief, Defendant Woods is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Woods is being sued in her official capacity.

11. ~~Defendant Alex Jameson is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Jameson was acting under the color of law in his capacity as a Detective of the Lakewood Police, and currently conducts business at: 480 S. Allison Parkway, Lakewood, Colorado 80226. Defendant Jameson may have evidence that is available for DNA testing that could substantiate Mr. Hunter's innocence. Upon belief, Jameson is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Jameson is being sued in his official capacity.~~

12. ~~Defendant Richard Tewes is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Tewes was acting under the color of law in his capacity as a Detective of the Lakewood Police, and currently conducts business at: 480 S. Allison Parkway, Lakewood, Colorado 80226. Defendant Tewes may have evidence that is available for DNA testing that could substantiate Mr. Hunter's innocence. Upon belief, Tewes is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Tewes is being sued in his official capacity.~~

13. ~~Defendant Patrick Wilson is a United States citizen and resident of the State of Colorado. At all times relevant to this action, the Defendant Wilson was acting under the color of law in his capacity as a Detective of the Lakewood Police, and currently conducts business at: 480 S. Allison~~

~~Parkway, Lakewood, Colorado 80226. Defendant Wilson may have evidence that is available for DNA testing that could substantiate Mr. Hunter's innocence. Upon belief, Wilson is aware of Mr. Hunter's actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate Mr. Hunter's actual innocence with the intent and understanding to prevent a collateral attack; thereby, depriving him of due process guaranteed under the Fourteenth Amendment. Defendant Wilson is being sued in his official capacity.~~

## JURISDICTION

14.    This action arises under the Constitution of the United States and Title 42 U.S.C. 1983. Jurisdiction is conferred upon the Court pursuant to 28 U.S.C. 1331, 28 U.S.C. 2201. Plaintiffs claim for injunctive and declaratory relief is authorized under 28 U.S.C. 2283, 2284 and Fed.R.Civ.P. 57 and 65.

15.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b), as all the events giving rise to this action occurred in the State of Colorado.

## FACTUAL BACKGROUND

### Mr. Hunter's Conviction in Jefferson County, Case Number 02CR354, Currently Being Attacked in Collateral Attack Proceedings.

15.    The Prosecution arrested and charged Mr. Hunter with second-degree burglary, and sexual assault. Mr. Hunter was convicted of second-degree burglary, and the sexual assault. The Prosecution's theory of case was that Mr. Hunter unlawfully entered the premises of RH, his neighbor, while wearing a mask, and sexually assaulted her and her daughter.

16.    It is alleged that on April 23, 2002, the victim R.H. was in her trailer at: 5555 West 16th Avenue in Lakewood, Colorado, when around 1 :00 a.m. she saw a figure standing in her hall. R.H. thought he had pulled a tube sock over his face, but still could not identify the perpetrator.

17.     A struggle ensued between the perpetrator and R.H. Initially, R.H. thought the perpetrator's voice sounded like her neighbor (Hunter), but later recanted this statement, stating that she did not think it was him. The suspect robbed R.H. of money and sexually assaulted her repeatedly, leaving an immense volume of DNA evidence on the victims clothing and other items in the residence. Unfortunately, this skin cell DNA could not be tested at the time due to undeveloped science in 2002. However, there were several hairs collected from the crime scene. During the early part of the investigation an expert witness for the prosecution mistakenly asserted that one of the discovered hairs tied Mr. Hunter to the crime.

18.     Mr. Hunter was arrested and charged with the underlying crimes. However, this criminal action was dismissed at a preliminary hearing due to the absence of evidence linking the Plaintiff to the crime scene.  The dismissal was required  since the evidence used to establish probable cause proved to be inaccurate, which effectively left the prosecution with no evidence supporting the charges.

19.     This false evidence (hairs) was microscopically examined by CBI. Defendant Yvonne Woods and while cooperating with DA Jensen and Det. Jameson. Woods initially made a microscopic comparison of the hairs and stated that this evidence was a match. The statement by Woods that the hair was "microscopically consistent" was a mischaracterized claim about the hair evidence. [Trans., 01/15/2004, p. 102]. In fact, the "match" referred to by the Woods was from a preliminary test, which the chemist admitted was not a match for DNA and led to the false positive. Recognizing this error, Woods confessed to the court this was a "blow to her ego."

20.     This evidence of a match was initially used to establish probable cause for an arrest warrant, but the court later dismissed the case after recognizing that the microscopic match was false, and

for the lack of any other evidence the case was dismissed. When the hair evidence was submitted for a more exact examination it was discovered that the hairs belonged to the victim R.H.

21.    Ten months after the crime, allegedly new evidence of a hair surfaced. There is no verification or record of collection of this hair from the crime scene by the Crime Scene Investigation Unit. The evidence labeling and packaging was not created by the responding CSI officers of Lakewood Police Department. Technicians from CBI could not confirm the evidentiary source of the hairs, suggesting that this evidence had to have been manufactured from an alternative source. Moreover, the subject hair evidence was discovered and logged into evidence ten months after the crime scene investigation, and the only person identified as the creator of the hair pack was Detective Jameson. It is most unusual in the investigative and evidence gathering process that a lead detective intervenes between the CSI and the CBI. The intervention is even more questionable when neither the CBI or the CSI can explain the background or source of the hair identification process. There is no verification that the evidence pack holding this hair was created by the CSI and there is no evidence that CBI collected this hair evidence from the crime scene location. The lack of source verification and lack of crime scene origination further, suggested fabrication.

22.    In addition, there is no lawful explanation on how this hair evidence came into existence. This hair evidence was taken from another hair pack that was in the custody and control of CBI, and used to create separate hair evidence pack by Detective Jameson that would be identified as collected from the crime scene. DNA testing revealed that this single hair belonged to Mr. Hunter and was falsely characterized as collected from the sheet found on the victim's couch. The evidence logs reveal that Detective Jameson and Wilson removed this hair evidence from the hair evidence collected directly from Mr. Hunter during the initial investigation, which afforded the Defendants access to hair evidence and the opportunity to fabricate probable cause. This gross injustice was

ignored by the Jefferson County District Court and although not the subject of this litigation, and is only offered to establish the serious threat of further destruction and fabrication of evidence required to prove Mr. Hunters innocence. Currently, Mr. Hunter requires testing of DNA evidence collected by the Defendants (herein) to prove his actual and factual innocence.

23.     Plaintiff would like to alert the Court to a recent announcement by the Colorado Bureau of Investigation that one of their top forensic scientists has been suspended and is under investigation for "anomalies" in DNA testing over the past 29 years.  Yvonne Woods is the name of the scientist that is under investigation.    This was the lead scientist in Plaintiff's criminal case and the request in this Complaint for further DNA testing will directly impact opinions and conclusions put forth by Ms. Woods.  This scientist is also the same individual that made a false conclusion that hairs examined under a microscope in this case were the Plaintiffs.  After a more technical examination all four hairs belonged to the victim and none belonged to the Defendant.

24.     On December 12, 2002, a grand jury was convened, and Mr. Hunter was ultimately indicted based on the same crimes. This indictment occurred seven days after Det. Wilson and Detective Jameson conspired to fabricate hair evidence and presented this false evidence to a grand jury. Plaintiff Hunter has consistently maintained his actual and factual innocence. According to a lab report which was the relevant exhibits to the petition, on 12-5-02 Det. Jameson separated a hair, sample item # 17-12. then put the hair in a new packet and had Det. Wilson return the hair. This evidence was used to indict Mr. Hunter at the Grand Jury. From the prosecutions own evidence, it can be shown that the questionably created hair pact was fabricated and manufactured from the previous sample Mr. Hunter voluntarily provided. See attached Exhibit signed by agent S. Mamolejo 5665.

25.    On July 2, 2002, the packet was booked by CSI into the care, custody, and control of the evidence custodian for the City of Lakewood Colorado Police department. On December 5, 2002, hair packet 2 was received and there is no one that can confirm the exact date when hair packet 2 was received. There is no evidence that hair packet 2 was created by CSI at the time of collection and logging of evidence gathered by CSI from the crime scene. On December 12, 2002, the report implicating the Plaintiff as the perpetrator of the criminal event was created by lab technician Bernardi. This evidence was latter the piece of evidence, examined and tested Yvonne Woods,  that led to Plaintiffs conviction.

26.    Det. Wilson handled the hair/fiber packet without logging out the evidence on 12-12-02 to use for the grand jury indictment. The hair packet was returned by Wilson, and it was noted by lab tech Bernardi that there were now two hair/fiber packets, and the new evidence wasn't marked. Because of the fabrication of new evidence, evidence item 17-12 should have been suppressed.

27.    Mr. Hunter's defense was that he was not the perpetrator. Had the handling of the hair packet evidence been known at the time of trial the defense would have been expanded to include claims that any DNA evidence was unreliable due to it being fabricated and planted by Jameson/Wilson. The issue surrounding this hair pack 2 should have disposed of the case in the same manner as the case was dismissed after the initial bogus hair examination was realized.

28.    There was a further claim that CBI developed a DNA mixture that according to the technology used by CBI contained a DNA mixture of the victim and Mr. Hunter. Mr. Hunter has pursued motions in state court to obtain DNA re-testing of the mixture DNA evidence allegedly collected from the crime scene. The motions for re-testing were made under C.R.S. 18-1-413. Mr. Hunter's post-conviction motion was to have the DNA tested with short tandem repeat of the Y

chromosome (Y-STR). There have been substantive advancements in DNA mixture testing and what 20 years ago seemed unreliable has proven with new technology to reliable.

29.    Plaintiff has asserted in the referenced motions that the advanced DNA testing would likely exonerate him, but retesting was denied. Plaintiff has always maintained his innocence; that he did not commit this crime.

30.    During investigation, substantive quality prints were lifted from the point of forced entry into the victim's residence. These prints did not match Mr. Hunters prints. The lifted entry way prints were determined by CSI persons to likely be the suspect prints who committed the crime. After repeated requests to have the prints run through the Automated Fingerprint Identification System (AFIS), CBI has not made any comparison through AFIS since April of 2002 all the way to now September of 2023, with no action being taken.

31.    There were random prints found inside the residence. None of the prints matched Mr. Hunter or the victim. No comparison was made between the random prints and the prints lifted from the point of entry.

32.    Defendant Jensen represented in filings in the State Court that he put the prints though AFIS. This has proven to be a false statement to the court by an officer of the court. It has been discovered by parties assisting Mr. Hunter that there is no report of any AFIS database search. This print is likely the actual suspect of this crime. Mr. Hunter has further given the Jefferson County District Attorney's office the name of parties that could be the source of the prints. One of the parties was present in Colorado on the night of the crime charged against Mr. Hunter. This individual is currently serving a sexual assault sentence in the State of Missouri for a sex crime committed after the crime charged against Mr. Hunter. The crime in Missouri has aspects of the crime that are very similar and unique to the crime committed in Mr. Hunter's case. There are two other male parities

that met the general description provided by the victim and were present in the immediate area at the time and on the date of the crime and the authorities refuse to run print comparison.

33.     Hunter's former Attorneys from the Innocence Project, Jud Lohnes and Jeanne Segil, have tried to work with Jefferson County District Attorney, Alexis King, from the Conviction Integrity Unit, to have this evidence tested. So far, these requests have not been fulfilled.

34.     As stated above Mr. Hunters post-conviction motion was to have the DNA tested with short tandem repeat of the Y chromosome (Y-STR) and the finger/palm print run through AFIS. Plaintiff understands that the DNA retest concerns technology that was not known at the time of his conviction and this request relates to new technology. Processing the prints against prints of suggested parties with known prints on file and doing an AFIS search 20 years ago was not asking the State to explore new technology. Prints have served as the basis of crime scene investigations long before the CSI conducted the gathering of evidence in this case. Falsely stating that an AFIS search had been requested and then when learning of the false request and continuing to refuse to run the test only compounds and extends the wrongful deprivation and violation of the Mr. Hunter's Constitutional rights without logical reason for not taking corrective actions and run the print requests.

35.     Mr. Hunters complaint is the state courts are denying him procedural due process, and the Colorado post-conviction DNA statute is unconstitutional as construed by the Colorado courts.

36.     Det. Richard Tewes destroyed all his written notes from the crime scene after being told to do so by Det. Jameson. [TR. 1-14-04 p 140-141].

37.     Mr. Hunter's allegations are Prosecutor Jenson and Detectives, Jameson, Tewes, and Wilson, either knowing, negligently or in conspiracy with one another fabricated, falsified, and manufactured this DNA evidence. The evidence was used in the criminal case against him, and the

use of the evidence deprived Hunter of a fair trial. Without the fabricated evidence the sentence would be invalidated or, called into doubt. Running the prints and identifying an alternate suspect would have resulted in charges being dismissed.

38.    Mr. Hunter further states that refusal or denial to run the prints as requested would amount to verification and corroboration that the State provocateurs violated multiple State and Federal Constitutional rights guaranteed to the Plaintiff.

**Mr. Hunter Has Made Good Faith Efforts to Gain Access To The Subject Evidence, But the Defendants Continue to Stonewall Access and DNA Testing Which Has and Continues to Deprive Him of a Liberty Interest in Fairly Collaterally Attacking His Conviction Based on the Unconstitutionality of the Judgment.**

39.    Plaintiff has timely exhausted all available judicial remedies prior to filing this complaint but continues to attempt to collaterally attack his conviction based on his factual and actual innocence. Unfortunately, the Defendants continue to deprive him of fair access to constitutionally mandated production of material evidence that if tested could prove his innocence.

40.    More specifically, Mr. Hunter has filed a Colorado Criminal Rule of Criminal Procedure Rule 35(c) petition, which was denied by the Trial Court in Jefferson County District Court. This denial of post-conviction relief was appealed to the Colorado Court of Appeals, and subsequently an Order was issued affirming the judgment. A Writ of Certiorari was then filed with the Colorado Supreme Court.

41.    In the underlying post-conviction action, on March 18, 2020, Mr. Hunter raised his actual innocence claim and requested complete and advanced DNA testing of any evidence in the custody and control of the State of Colorado. This request was unfortunately denied by the Trial Court on March 26, 2020.

42.    On March 24, 2022, a writ of certiorari was filed with the Colorado Supreme Court. On May

23, 2022, the court denied the writ in case No. 22SC220.

**The Statute of Limitations and Justifiability of the Underlying Action Favor Review.**

43.     Hunter filed this complaint within two years of the court's denial of Certiorari in case no. 22SC220. *See Reed v. Goertz, 143 S. Ct. 955 (April 19, 2023)* (Petitioner's 1983 claim, which raised a procedural due process challenge to post-conviction DNA testing law, was timely because the statute of limitations began to run when the Texas Court of Criminal Appeals denied petitioner' s motion for rehearing.)

44.     Thus, this complaint is timely made under the rational of *Reed v. Goertz, Id. at 962* ("When a prisoner pursues state post-conviction DNA testing through the state-provided litigation process, the statute of limitations for a 42 U.S.C.S. 1983 procedural due process claim begins to run when the state litigation ends.").

45.     Moreover, a controversy exists with respect to the constitutionality of the Defendant's denial of fair access to constitutional material evidence needed to substantiate Mr. Hunter's actual and factual innocence and establish an exception to any procedural bar based on his actual and factual innocence—miscarriage of justice exception.

**FIRST CLAIM FOR RELIEF
AND SUPPORTING FACTUAL ALLEGATIONS
42 U.S.C. 1983—Denial of Due Process—14th Amendment Violation
(Denial of Access Constitutionally Material Evidence for DNA Testing)**

46.     Plaintiff hereby incorporates by reference, for all purposes herein, paragraphs 1 through 45, as if fully set forth herein.

47.     Defendants were acting under the color of state law in their actions and inactions during all relevant times to this action.

48. A post-conviction claim for DNA and finger/palm print testing is properly pursued in a 42 U.S.C. 1983 action. The success of this claim gains Mr. Hunter only access to untested biological evidence for DNA testing, which may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests, here, necessarily imply the unlawfulness of the State's custody. *Skinner v. Switzer, 562 U. S. 521, 525, 131 S. ct. 1289, 179 L. Ed. 2d 233 (2011).* As such, the Heck rule has no applicability here. See *Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129L. Ed. 2d 383 (1994).*

49. A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process. *Reed v. Goertz, 143 S. Ct. 955, 961 (April 19, 2023).*

### Deprivation of Protected Liberty Interest in DNA Testing Untested Biological Evidence That Will Prove Mr. Hunter's Innocence.

50. Mr. Hunter has a liberty interest in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of sentence in clemency proceedings with the Governor of Colorado under the Fourteenth Amendment to the constitution of the United States.

51. The access to biological evidence and testing of this evidence was never properly afforded to Mr. Hunter due to the conspirator and abusive conduct of the Defendants, and Defense Counsel ineffectiveness. Moreover, the development of DNA science from the outset of this litigation was undeveloped and therefore unavailable to Mr. Hunter. Therefore, any lack of testing of the subject's biological evidence is not due to lack of diligence on Mr. Hunter's part.

### Inadequate State Process for Testing Evidence for DNA Through No Fault of Mr. Hunter.

52.     The State of Colorado is currently using a false narrative and circumventing statutory law to procedurally bar Mr. Hunter from DNA testing untested biological evidence that will prove his factual and actual innocence. This circumvention of Colorado law has effectively deprived Mr. Hunter access to the very evidence needed to prove his factual and actual innocence. Moreover, this sadistic and malicious conduct is upon belief pretextual, and designed to fabricate a basis to destroy and conceal constitutionally material evidence that is very likely to prove Mr. Hunter's innocence; thus, presenting an imminent threat of a constitutional violation. Therefore, the Defendants and the State of Colorado's refusal to release the listed biological evidence for testing has deprived Mr. Hunter of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of sentence in clemency proceedings with the Governor of Colorado.

53.     DNA known as Y-STR will yield a genetic profile identifying an alternative suspect Kenny Smith if subjected to testing, but thus far the Defendants have denied access to this biological evidence with the intent and understanding prevent a fair use of legal process and mechanisms to collaterally attack his conviction. Noting, this malicious prosecution and the conspirator conduct is not the subject of this litigation and is only offered to identify the motive and serious threat of destruction of evidence that necessitates a temporary restraining order preserving evidence.

54.     Evidence collected in this case is in the possession of the Defendant and their respective agencies, and has been since Hunter's trial. The evidence was not tested for Y-STR (Skin Cell) DNA at that time, which could have eliminated the Plaintiff as a contributor, therefore proving his innocence in this case. This biological evidence includes, but is not limited to:

- Rape Kit (Containing seminal fluids and other skin cell DNA from Kenny Smith the actual perpetrator).

- Catchup Bottle (Used to sexually assault victim RH, which has skin cell DNA From Kenny Smith the actual perpetrator).
- Bodily fluids collected at the crime scene (Containing DNA from Kenny Smith the actual perpetrator).
- Rug (Containing DNA from Kenny Smith the actual perpetrator).
- Sheet (Containing DNA from Kenny Smith the actual perpetrator).
- Blankets (Containing DNA from Kenny Smith the actual perpetrator).
- Victim RH's pants and panties (Containing DNA from Kenny Smith the actual perpetrator).
- Victims RH's jacket (Containing DNA from Kenny Smith the actual perpetrator)

55.     The above identified biological evidence will link the alternative suspect to the subject sexual assault of the victim R.H. and exonerate Mr. Hunter of any wrongdoing; thus, substantiating Mr. Hunter's actual and factual innocence, which he has continuously maintained despite the Defendants and State of Colorado's continuous efforts to stonewall the collateral attack of this conviction, which is out of step with substantial compliance with due process of law under the Fourteenth Amendment.

56.     As required by C.R.S. 18-1-413, the evidence collected in this case can be subjected to a newer method of DNA (Skin cell) testing (Y-STR) that provides a reasonable likelihood of results that are more accurate and probative than the results of previous DNA testing, and will prove Mr. Hunter's innocence based on skin cell evidence left on numerous items collected by the Defendants and other law enforcement that will match the DNA profile of Kenny Smith the actual perpetrator of this crime. Noting, Mr. Smith's DNA profile is currently in the Federal Combined DNA Index system (CODIS).

57.     Hunter meets all the requirements for DNA testing as required by C.R.S. 18-1-413; however, Mr. Hunter was denied due process at the state level based on a false narrative and circumvention of statutory law. In fact, Mr. Hunter respectfully asserts that the current mechanism for DNA testing

under C.R.S. 18-1-413 allows an innocent citizen to be denied access to DNA evidence when a judicial official uses a false narrative to substantiate a deficiency in the pleads, despite a duty to liberally construe the pleadings of a pro se litigant. It is unconstitutional to deny Mr. Hunter access to untested biological evidence for DNA testing when he states that he is innocent and that this biological evidence will identify the alternative suspect.

58.    The definitive identity of the perpetrator was, and remains an issue in this case, but is very likely that Kenny Smith will be identified as the alternative suspect due to his pattern of sex crime, opportunity, and tacit confession to this crime to a private investigator.

59.    The subject DNA testing identifying Mr. Kenny Smith as the alternative suspect will prove Mr. Hunter's actual and factual innocence and undermine the extant judgment. Being such, good cause exists for the Federal Court to intervene and estop the Defendants from denying Mr. Hunter fair access to the subject biological evidence, which is likely to afford Mr. Hunter a fair review by the Governor of Jared Polis and an additional review of the unconstitutionality of this conviction based on the miscarriage of justice exception.

60.    In addition, Hunter's finger and palm prints were not matched to the suspected print found at the crime scene. These prints were supposedly sent to AFIS, but the results have never been provided to Hunter or his attorneys, which begs the question: why? It is likely because this evidence will show that when the prints impressed at the time the crime was perpetrated and that it was not Hunter. This evidence, thus, will likely prove to be exculpatory.

61.    Hunter asserts the State either suppressed the AFIS report evidence and identity of the AFIS result or they have falsified statements to the Court. Nevertheless, the Defendants are currently

denying Mr. Hunter access to this evidence for proper analysis, which is currently denying him due process to the fair collateral attack of his conviction.

62.     Prints are frequently left at scenes of crimes and are reliable. The prosecution should disclose to the defense such information as it has that may reasonably be considered admissible and useful to the defense in the sense that it is probably material and exculpatory.

63.     Experts have testified that: "AFIS system is designed to search for people who have fingers that closely match the prints found at a crime scene." People v. Austin, 35 Cal.App.5th 778 (Cal. Ct. App. 2019). Thus, access to the subject print evidence is material and likely to change the results of the underlying conviction if an analysis proves to link an alternative suspect to the crime scene, namely Mr. Kenny Smith.

### Woods and defendants' concealment of constitutional evidence effectively stonewalls collateral attack.

64.     Currently, the state of Colorado is outraged with respect to Woods' abusive forensic testing practices, including her purported fabrications of identification evidence in the subject Hunter case. Woods has been fired and is no longer an agent of the Colorado Bureau of Investigation: However, Woods has personal knowledge with respect to the evidence in the Hunter criminal case and the testing practice used by her to identify to identify him as the alleged perpetrator. This conditionally material evidence is critical to the collateral attack of Mr. Hunter criminal conviction and is required to establish the injustice requirement under applicable clemency laws in Colorado, which provided no discovery mechanisms for collecting or compelling this exculpatory evidence.

65.     In addition, the conditionally material evidence in this equitable action is required to effectively collateral attack the extent criminal judgment in case number 2002 RC 354 (Jefferson

County). Defendants Woods, Schaffer, King, Marinelli, and Smith are effetely concealing information regarding the invalidly of the identification evidence presented by the state agents Mr. Hunter with knowledge that this evidence could potentially establish a viable basis for reversal of the extant judgment. These conspiratorial efforts to stonewall ligation have directly violated Mr. Hunter's due process right to fairly, and effectively, collaterally attack his wrongful judgment.

66.     The current denial of constitutionally material evidence includes but is not limited to: (1) Wood's intentional concealment of details concerning each of the cases that she fabricated evidence to establish the identity of the alleged perpetrator. From 2000 to 2024, and details concerning Kings, Schaffer, Smith, and Marinelli's involvement in the numerous due process violation including the concealment of these corrupt practices in the Hunter criminal case: (2) evidence of King's intentional effort to coverup Woods', and other officers', fabrications of evidence in the underlying criminal matter relater to Mr. Hunter's identification as the alleged perpetrator, and conspiracy to stonewall litigation. Given the dynamics of the underlying criminal matter this civil rights action is currently the only viable means of procuring reliable evidence of the subject due process violations: in particular, the very evidence required to establish and exception to the success to petition doctrine and collateral attack statue is currently being concealed by the defendants. The discovery in this matter will produce the evidence required to pursue the successful collateral attack at the state court level. In absence of a fair opportunity to open the doors of discovery related to the obvious due process violations, the plaintiff is currently unable to effectively enforce his constitutional right to collaterally attack his wrongful conviction.

## PRAYER FOR RELIEF

67.   WHEREEFORE, Plaintiff respectfully prays that this Court enter an order:

A.   Issuing declaratory relief, declaring that the acts and omissions of defendants are violation Plaintiffs Due Process rights to prove his innocence and/or fairly establish a basis for post-conviction relief, and stating the defendant's duties with respect to those rights.

B.   Issuing injunctive relief, commanding the defendants provide Plaintiff access to the print results and all biological evidence in their custody and control for proper DNA testing performed.

C.   Any other relief this Court deems just and proper.

**Respectfully submitted,**

Dated this 22nd day of February 2023

s/Kenneth Mark Burton

_____

Kenneth Mark Burton
ATTORNEYAT LAW
The Law Offices of Mark Burton,
1175   ge Street, Suite 210
Denver CO, 80204
Phone 303.517-1187
Fax 303.379-3922
Email:  burtonslaw2000@yahoo.com

| Owner's Name | Date of Birth | Address (Res) | | Telephone | ☐ (x=day) |
| LPD | | Zip Code (Bus) | | | ☐ |
| Arrestee | Date of Birth | Address (Res) Zip Code (Bus) | | Telephone | ☐ (x=day) ☐ |
| Received From | Date of Birth | Address (Res) Zip Code (Bus) | | Telephone | ☐ (x=day) ☐ |
| CBI | | | | | ☐ |

| Agent Receiving/ID Number | Date/Time Received | Date/Time Booked 1/6/03 | Location Received |
| S. Marmolejo 5665 | 12/5/02 1355 | 1/6/03 1500 | CBI |
| Property Technician Receiving/ID Number | Date/Time Received | Personal Receipt | Bin Number |
| S Marmolejo 5665 | 1/6/03 1500 | ☐ Yes   ☐ No | HAZ 22 |

| Release Items (Number) | Authorized by/ID Number | Date | Time |
| | | | |
| Release Items (Number) | Authorized by/ID Number | Date | Time |
| | | | |

| Item Number | Quantity | Description | Gross Weight/ Serial Number | Bin Number |
|---|---|---|---|---|
| 1 | 1 | Hair / fiber packet #2 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Narrative

Above item received from CBI. Checked in on report w/original hair + fiber packet. When tech Bernardi went to CBI on 12/26/02, she picked up a hair and fiber packet. After researching why we had (2) hair + fiber packets, was discovered that Det Jameson separated items from original packet and had Det. W.K

| Agent Signature/ID Number | Supervisor's Initials/ID Number | Investigating Agent | ☐ CBI   ☐ Tech. Services   ☐ Other |
| S Marmolejo 5665 | | Det. Jameson | Queried NCIC/CCIC   ☐ yes   ☐ no |
| 76 DPS 3 (Rev. 1/9?) take to CBI. Booked those items on this new report. | | | Page ___ of ___ |

002CR01612, 3002CR03254

6

000978

Exhibit