20CA0993 Peo v Hunter 01-27-2022

COLORADO COURT OF APPEALS

DATE FILED: January 27, 2022
CASE NUMBER: 2002CR3254

Court of Appeals No. 20CA0993
Jefferson County District Court No. 02CR3254
Honorable Diego G. Hunt, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Henry Hunter,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE GOMEZ
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 27, 2022

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

James Henry Hunter, Pro Se

¶ 1   Defendant, James Henry Hunter, appeals the trial court's order denying his petition for new DNA testing.  We affirm.

## I.   Background

¶ 2   In 2004, Hunter went to trial on charges of second degree burglary, sexual assault, and sexual assault on a child for breaking into and entering his neighbor's home and sexually assaulting her and her daughter.  There was no question that the crimes had been committed; the only question was whether the masked perpetrator who had committed them was Hunter.

¶ 3   During the trial, the prosecution introduced DNA evidence linking Hunter to the crime scene — specifically, two pubic hairs matching his DNA profile (one matching his profile alone and the other matching his profile with a mixture of the adult victim's DNA).  The prosecution also presented other evidence pointing to Hunter, including, among other things, his admission to investigating officers that he was in the area the night of the crimes (he claimed he was at home next door), his body size and features matching the adult victim's description of the perpetrator, evidence that he was wearing clothes on the night of the crimes matching the description

of the perpetrator's clothes, and the adult victim's testimony that she recognized his voice based on her prior conversations with him.

¶ 4    The jury convicted Hunter on all charges, and the court sentenced him to an aggregate prison term of eighty-four years to life and designated him as a sexually violent predator.

¶ 5    On direct appeal, a division of this court affirmed the convictions but vacated and remanded the sexually violent predator designation for more specific factual findings. *People v. Hunter*, (Colo. App. No. 04CA0699, Mar. 1, 2007) (not published pursuant to C.A.R. 35(f)). Hunter didn't raise any challenges on appeal relating to the DNA evidence presented at trial. The supreme court denied certiorari review, and the mandate was issued in 2007.

¶ 6    On remand, the trial court made further findings supporting its designation of Hunter as a sexually violent predator. Hunter appealed that issue again. Ultimately, the supreme court upheld the designation. *People v. Hunter*, 2013 CO 48, ¶ 18. The mandate in that case was issued in 2013.

¶ 7    In 2016, Hunter, through counsel, filed a timely Crim. P. 35(c) motion alleging ineffective assistance by his trial counsel. In one of his claims, he argued that trial counsel had failed to challenge

2

deficiencies in the logging, storage, and analysis of the DNA evidence. The postconviction court denied the motion without a hearing. As to the claim regarding DNA evidence, the court reasoned that the claim was essentially an attack on the sufficiency and admissibility of the DNA evidence and, as such, was barred because it could've been raised on direct appeal. The court also held that, even if the claim wasn't barred, it failed because Hunter's trial counsel had thoroughly litigated issues regarding the DNA evidence at a pretrial hearing and there was no reasonable probability that any mistake could've affected the outcome.

¶ 8  In a motion to reconsider, Hunter argued that the real issue regarding the DNA evidence was that no written reports confirmed that any of the hair follicles found at the scene belonged to him. The postconviction court denied the motion to reconsider.

¶ 9  On appeal, a division of this court affirmed. *People v. Hunter*, slip op. at ¶ 33 (Colo. App. No. 17CA2112, Apr. 25, 2019) (not published pursuant to C.A.R. 35(e)). In doing so, the division concluded that the record directly refuted Hunter's claim relating to the DNA evidence, as "a laboratory report . . . confirmed that two of Hunter's pubic hairs were found" at the scene. *Id.* at ¶ 22. The

3

division also agreed with the postconviction court that, "[t]o the extent Hunter complains about chain of custody or labeling issues, . . . these are sufficiency and admissibility claims that could have been raised on direct appeal and are therefore not properly considered under Rule 35(c)." *Id.* at ¶ 24.  The supreme court denied review, and the mandate was issued in February 2020.

¶ 10   A month later, Hunter, acting pro se, filed the underlying petition for new DNA testing pursuant to sections 18-1-411 to -417, C.R.S. 2021.  He argued that a piece of DNA evidence used to convict him was "highly suspect due to [a] break in the chain-of-custody" and was "unconvincing in light of advances in DNA technology."  Thus, he requested new DNA testing, which he argued would exclude him as the perpetrator of the crimes.

¶ 11   The trial court denied the petition, concluding that Hunter had failed to sufficiently allege two of the factual criteria required by section 18-1-413, C.R.S. 2021.  First, he hadn't adequately alleged that favorable results of DNA testing would demonstrate his actual innocence.  Rather, the court pointed out, the division in his Crim. P. 35(c) appeal had concluded that the record refuted his argument challenging the reliability of the earlier DNA testing.  And second,

4

he hadn't alleged that DNA testing wasn't available prior to his conviction. Instead, he alleged only that "advanced" DNA testing wasn't available at that time.

## II.   Analysis

¶ 12   Hunter's arguments on appeal fall into two categories: (1) arguments concerning alleged ineffective assistance by various attorneys who represented him at different times in the case; and (2) arguments concerning the trial court's denial of his petition for new DNA testing. We consider each in turn.

### A.   Ineffective Assistance of Counsel

¶ 13   Hunter's primary argument on appeal is that he received ineffective assistance from counsel throughout the case: from his trial counsel, who failed to call an expert witness to establish the unreliability of the DNA evidence due to a "break in [the] chain of custody causing contamination and a false positive" from one of the DNA samples; from his appellate counsel on direct appeal, who failed to challenge the reliability of the DNA evidence in that appeal; and from his postconviction counsel, who failed to include this issue in his Crim. P. 35(c) motion.

¶ 14   Hunter's ineffective assistance claims fail for several reasons.

5

¶ 15     First, the claims were not preserved.  Even broadly construing Hunter's pro se petition for new DNA testing, *see People v. Cali*, 2020 CO 20, ¶ 34, the petition didn't raise any ineffective assistance claims.  The petition referred to alleged ineffective assistance by trial counsel only in the context of attempting to satisfy one of the elements for DNA testing.  *See* § 18-1-413(1)(c)(II) (requiring a petitioner to demonstrate that they didn't secure DNA testing prior to their conviction because such testing wasn't reasonably available "or for reasons that constitute justifiable excuse, ineffective assistance of counsel, or excusable neglect").  But it didn't separately allege that Hunter was entitled to relief based on the alleged ineffective assistance of his trial counsel.  And nowhere did it refer to any alleged ineffective assistance by Hunter's appellate or postconviction counsel.  Thus, the claims were not preserved for purposes of this appeal.  *See People v. Stovall*, 2012 COA 7M, ¶ 3 (concluding that ineffective assistance claims not presented to the trial court weren't properly before this court).

¶ 16     Second, the claims are untimely.  Ineffective assistance claims, as collateral attacks on judgments of conviction cognizable under Crim. P. 35(c), are subject to the limitations period prescribed by

6

section 16-5-402(1), C.R.S. 2021.  *See People v. Thomas*, 867 P.2d 880, 885-86 (Colo. 1994); *People v. Clouse*, 74 P.3d 336, 338-39 (Colo. App. 2002).  Because Hunter was convicted of non-class 1 felonies, under section 16-5-402(1), he had three years from the conclusion of his direct appeal to bring any ineffective assistance claims.  *See* § 16-5-402(1) (establishing a three-year limitation period following the date of a non-class 1 felony conviction); *Hunsaker v. People*, 2021 CO 83, ¶ 26 (explaining that a "conviction" occurs for purposes of the statute once a defendant's appeal of the conviction has been exhausted).

¶ 17   But Hunter didn't file the underlying petition until 2020 — about thirteen years after the mandate was issued in his direct appeal (in 2007) and seven years after the mandate was issued in his appeal from the amended sexually violent predator designation (in 2013).  And he hasn't asserted any grounds for an exception under the statute.  *See* § 16-5-402(2); Crim. P. 35(c)(3)(I); *People v. Abad*, 962 P.2d 290, 291 (Colo. App. 1997).

¶ 18   Thus, even if we were to conclude that Hunter's convictions weren't final until the conclusion of his appeal of the amended sexually violent predator designation, his ineffective assistance

7

claims are untimely. And, while a later deadline might apply to a claim for ineffective assistance by postconviction counsel, *see* § 16-5-402(2)(d); *Clouse*, 74 P.3d at 341, as we have explained, no such claim was preserved.

¶ 19   And third, the claims are successive. Absent specific circumstances not alleged here, courts must deny postconviction claims arising under Crim. P. 35(c) if the claims either were or could have been raised and resolved in a prior appeal or postconviction proceeding. Crim. P. 35(c)(3)(VI)-(VII); *People v. Houser*, 2020 COA 128, ¶ 15.

¶ 20   Hunter could have raised his ineffective assistance claims (aside from his claim of ineffective assistance of postconviction counsel) previously, in his earlier Crim. P. 35(c) motion and in his appeal from the denial of that motion. Indeed, he did raise ineffective assistance claims in those proceedings — and he raised one such claim relating specifically to his trial counsel's handling of the DNA evidence. Thus, it is clear not only that Hunter could have — but that he did — raise these issues in prior proceedings, even if his arguments are slightly different now.

¶ 21  For all these reasons, we decline to review Hunter's ineffective assistance claims.

## B. New DNA Testing

¶ 22  Hunter also argues that the trial court erred by denying his petition for new DNA testing. We are not persuaded.

¶ 23  As the trial court explained, a petition for DNA testing must "include specific facts sufficient to support a prima facie showing that post-conviction relief is warranted under the criteria set forth in section 18-1-413." § 18-1-412(2), C.R.S. 2021. And if the motion, files, and record show to the satisfaction of the court that the petitioner isn't entitled to relief based on the criteria in section 18-1-413, the court must deny the motion without a hearing or the appointment of counsel. § 18-1-412(3).

¶ 24  Those section 18-1-413 factual criteria include the following:

> (a) Favorable results of the DNA testing will demonstrate the petitioner's actual innocence;
>
> (b) A law enforcement agency collected biological evidence pertaining to the offense and retains actual or constructive possession of the evidence that allows for reliable DNA testing;
>
> (c)(I) Conclusive DNA results were not available prior to the petitioner's conviction; and

9

> (II) The petitioner did not secure DNA testing prior to his or her conviction because DNA testing was not reasonably available or for reasons that constitute justifiable excuse, ineffective assistance of counsel, or excusable neglect; and
>
> (d) The petitioner consents to provide a biological sample for DNA testing.

§ 18-1-413(1).  In this context, "actual innocence" means "clear and convincing evidence such that no reasonable juror would have convicted the defendant."  § 18-1-411(1).

¶ 25    The trial court determined that Hunter hadn't adequately alleged factual criteria (a) and (c)(I).

¶ 26    We review that determination de novo.  Although review of a postconviction petition for DNA testing generally presents a mixed question of fact and law, in which the court's factual findings are reviewed for clear error and its legal conclusions de novo, *People v. Thompson*, 2020 COA 117, ¶ 24, here the trial court denied the petition without conducting a hearing or making any factual findings.  Thus, the de novo standard applicable to a court's denial of a Crim. P. 35(c) motion without a hearing is more fitting.  *See Houser*, ¶ 43.

¶ 27   Applying this standard, we agree with the trial court that Hunter failed to adequately plead the factual criteria in section 18-1-413(1)(a) and (c)(I).

¶ 28   As to factual criterion (1)(a), Hunter didn't adequately plead that favorable DNA testing would demonstrate his actual innocence. Although he speculates that new DNA testing could establish that the prior testing of one of the samples (which supposedly had been contaminated during a break in the chain of custody) resulted in a false positive, that still wouldn't negate the other sample from the scene that also matched his DNA profile. Nor would it negate the other evidence that supported the jury's verdict — including, in particular, evidence that he was in the vicinity of the crime scene at the time of the crimes, that his body size and features matched those of the perpetrator, that he was wearing clothes that fit the description of those worn by the perpetrator, and that the adult victim recognized his voice.

¶ 29   Thus, additional testing would not demonstrate actual innocence, as it would not provide clear and convincing evidence such that no reasonable juror would have convicted Hunter of the crimes. *See* § 18-1-411(1); *see also Thompson*, ¶ 26 (agreeing with

11

the trial court that any DNA testing revealing the absence of the defendant's DNA on items from the crime scene wouldn't establish his actual innocence, as it "would not necessarily or logically rebut other strong evidence of [his] guilt"); *People v. Young*, 2014 COA 169, ¶¶ 62-63 (affirming the trial court's finding that the defendant had shown only that evidence from the crime scene could be subject to further DNA testing but not that such testing would have established his actual innocence).

¶ 30     Additionally, as to factual criterion (1)(c)(I), Hunter didn't allege that conclusive DNA results were not available prior to his conviction. He alleged only that one of the two DNA samples that was presented at trial was contaminated and that additional testing with newer technology might show it didn't match his DNA profile. In reviewing Hunter's Crim. P. 35(c) appeal, a division of this court has already rejected his argument that the DNA evidence presented at trial wasn't conclusive. His challenges to the sufficiency and admissibility of that evidence, which the trial court and divisions of

12

this court have rejected multiple times, don't satisfy his burden under section 18-1-413(1)(c)(I).[1]

### III.  Conclusion

¶ 31  The order is affirmed.

JUDGE J. JONES and JUDGE LIPINSKY concur.

---

[1] Because we agree with the reasons stated by the trial court for its denial of the petition, we don't consider the People's argument that Hunter also failed to include the results of all prior DNA tests in his petition, as required by section 18-1-412(2), C.R.S. 2021.

# Court of Appeals

**STATE OF COLORADO**
2 East 14th Avenue
Denver, CO 80203
(720) 625-5150

**PAULINE BROCK**
**CLERK OF THE COURT**

## NOTICE CONCERNING ISSUANCE OF THE MANDATE

Pursuant to C.A.R. 41(b), the mandate of the Court of Appeals may issue forty-three days after entry of the judgment. In worker's compensation and unemployment insurance cases, the mandate of the Court of Appeals may issue thirty-one days after entry of the judgment. Pursuant to C.A.R. 3.4(m), the mandate of the Court of Appeals may issue twenty-nine days after the entry of the judgment in appeals from proceedings in dependency or neglect.

Filing of a Petition for Rehearing, within the time permitted by C.A.R. 40, will stay the mandate until the court has ruled on the petition. Filing a Petition for Writ of Certiorari with the Supreme Court, within the time permitted by C.A.R. 52(b), will also stay the mandate until the Supreme Court has ruled on the Petition.

BY THE COURT:    Gilbert M. Román,
Chief Judge

DATED:  January 6, 2022

*Notice to self-represented parties:  The Colorado Bar Association provides free volunteer attorneys in a small number of appellate cases.  If you are representing yourself and meet the CBA low income qualifications, you may apply to the CBA to see if your case may be chosen for a free lawyer.  Self-represented parties who are interested should visit the Appellate Pro Bono Program page at*
*http://www.cobar.org/appellate-pro-bono*