# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-2989-DDD-MEH

JAMES HUNTER

    Plaintiff,

v.

ALEXIS KING, District Attorney for the 1st Judicial District, in her official capacity,

CHRIS SCHAFFER, Director of the Colorado Bureau of Investigation, in his official capacity,

REGGIE MARINELLI, Sherrif of the Jefferson County Sheriff's Department, in his official capacity,

CHIEF SMITH, Chief of Police for the Lakewood Police Department, in his individual capacity, and

YVONNE M. WOODS, Officer, laboratory technician of the Colorado Bureau of Investigation in her individual capacity,

    Defendants.

_____

## DEFENDANT YVONNE M. WOODS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
_____

Defendant Yvonne M. Woods, by and through her attorneys Overturf McGath & Hull, P.C., hereby submits her Motion to Dismiss Plaintiff's First Amended Complaint and in support states as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(b)(1); DDD Civ.P.S. III(D), undersigned counsel conferred with Plaintiff's counsel regarding the requested relief. Plaintiff opposes this Motion.

## I.     INTRODUCTION AND BACKGROUND

Plaintiff James Hunter ("Plaintiff") is seeking post-conviction DNA testing related to his conviction in Colorado state court, case number 02CR3254, on second-degree burglary and sexual assault charges. (ECF 2, ¶ 12; ECF 39, Ex. A & B[1]). Following his 2004 conviction, Plaintiff pursued a series of appeals in Colorado's state courts. Most recently, Plaintiff filed a petition for new DNA testing pursuant to C.R.S. § 18-1-413, which the trial court denied. (*See* ECF 39, Ex. A.) The Colorado Court of Appeals affirmed the trial court's denial of Plaintiff's request on January 27, 2022 and the Colorado Supreme Court declined to review that decision in May of 2022. (ECF 39, Ex. B; ECF 39, ¶ 39). Mr. Hunter then filed this 42 U.S.C. § 1983 action alleging that the Defendants have violated his due process rights by withholding the DNA evidence he sought to have retested through his earlier petition.

Plaintiff's Amended Complaint contains a single "due process" claim against Defendant Woods alleging that she conspired with other Defendants to prevent Plaintiff from retesting the DNA evidence related to his initial conviction. However, Plaintiff fails to identify any conduct by Defendant Woods related to Plaintiff's post-conviction petition that suggests any involvement in the alleged constitutional violations or her participation in any conspiracy during this period.

---

[1] Defendant Woods requests that the Court take judicial notice of the docket report in Jefferson County District Court Case 2002CR3254 (ECF 39 Ex. A) and the Colorado Court of Appeals' January 27, 2022 Opinion affirming the state trial court's denial of Plaintiff's petition for new DNA testing (ECF 39 Ex. B). The Colorado Court of Appeals' Opinion summarizes Mr. Hunter's state criminal proceedings, which include Court of Appeals Cases 2004CA699, 2008CA316, 2017CA2112, and 2020CA993, and Colorado Supreme Court Cases 2010SC146, 2019SC411, and 2022SC220 (denying certiorari on Case 2020CA993). Per Fed. R. Evid. 201, a court "may take judicial notice of undisputed court documents and matters of public record as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hansen v. Harper Excavating, Inc*., 641 F.3d 1216, 1219, n.2 (10th Cir. 2011) (citation omitted) (under Fed. R. Evid. 201, judicial notice may be taken "at any stage of the proceeding"). Plaintiff generally challenges his state court conviction and his post-conviction access to DNA for testing, which directly relate to his claims here and the Court's consideration of them does not convert this Motion into one for summary judgment.

2

Defendant Woods should not be included in this action because she is not and has never been the custodian of any DNA evidence that Plaintiff seeks to test. Plaintiff also failed to allege sufficient facts to show Defendant Woods' actual involvement in the alleged constitutional violations that would give rise to liability. As such, Defendant Woods respectfully requests that the Court dismiss Plaintiff's claim against her.

## II.   STANDARD OF REVIEW

### A.  Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction. *See Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Motions to dismiss for lack of subject matter jurisdiction may take two forms: (1) making a "facial attack" on the sufficiency of the "allegation as to subject matter jurisdiction" in the complaint or (2) "go[ing] beyond allegations contained in the complaint and challeng[ing] the facts upon which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002–3 (10th Cir. 1995). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* at 1003.

### B.  Failure to State a Claim Pursuant to Fed. R. Civ. P 12(b)(6)

When considering a motion filed under Fed. R. Civ. P. 12(b)(6), a court's function is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency test has two prongs. First, a court must accept as true allegations that are not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not warrant the presumption of truth. *Id*. at 678.

Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 679. Plausibility means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The Court, however, need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).

A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will it do if it "tenders 'naked assertion[s]' devoid of 'further actual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, conclusory allegations are "not entitled to the assumption of truth" and are not considered. *Id*. at 679. Instead, a court looks to whether the complaint includes "enough factual matter (taken as true) to suggest that" the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556.

### III.   ARGUMENT

#### A. THIS COURT LACKS JURISDICTION FOR THE CLAIM ASSERTED AGAINST DEFENDANT WOODS UNDER THE *ROOKER-FELDMAN* DOCTRINE AND THUS, SHOULD DISMISS PLAINTIFF'S CLAIM FOR RELIEF

Despite Plaintiff's attempts to slightly reframe his request for relief, Plaintiff seeks impermissible review of prior Colorado state court decisions. Thus, Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction.

Under the *Rooker-Feldman* doctrine, "federal courts [may not adjudicate] cases brought by state-court losing parties challenging state-court judgments." *Reed v. Goertz*, 598 U.S. 230, 235,

4

143 S. Ct. 955, 960 (2023). Generally, the losing party in state court may not file a U.S. District Court case after state proceedings end to complain of an injury caused by the state court decision and to seek rejection of the state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 531, 131 S. Ct. 1289, 1297 (2011). The Supreme Court has clarified that "even though a 'state-court decision is not reviewable by lower federal courts,' a 'statute or rule governing the decision may be challenged in a federal action.'" *Goertz*, 598 U.S. at 235 (citing *Skinner,* 562 U.S. at 532).

Plaintiff's prayer for relief seeks access to DNA evidence from his criminal trial so he can have it retested. However, he already requested this same relief pursuant to C.R.S. § 18-1-413 in Colorado State Court. A Colorado trial court denied his petition, and the Colorado Court of Appeals upheld the trial court's denial. (ECF 39 at ¶¶ 36–39.) Seemingly recognizing this issue, Plaintiff attempts to avoid the *Rooker-Feldman* doctrine by alleging that "the Colorado post-conviction statute is unconstitutional as construed by the Colorado courts." (ECF 39 at ¶ 32 (emphasis added).) Even though he invokes the constitutionality of the statute, the above allegation makes it clear that Plaintiff is challenging the state courts' decisions in applying the DNA testing statute, and not challenging the constitutionality of the statute itself. Plaintiff does not make any challenge to the facial constitutionality of the Colorado statute, nor does he allege that the procedure for obtaining post-conviction DNA testing is unconstitutional. Because Plaintiff already sought relief in Colorado state courts and his only allegation is that the Colorado courts incorrectly applied the statute, his request for relief is a direct challenge to the state court rulings. Plaintiff cannot ask this federal court to decide this issue simply because he did not get the outcome he wanted in the state courts. Accordingly, the *Rooker-Feldman* Doctrine bars Plaintiffs claims in the

instant matter and the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

### B. PLAINTIFF FAILED TO ALLEGE A VALID SECTION 1983 CLAIM AGAINST DEFENDANT WOODS AND THUS, HIS CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To prevail on a 42 U.S.C. § 1983 claim, Plaintiff must be able to demonstrate that Defendant Woods, acting under color of state law, violated a right, privilege, or immunity secured by the constitution or laws of the *United States. Hill v. Ibarra*, 954 F.2d 1516, 1520 (10th Cir.1992). Plaintiff cannot succeed on this claim because (1) he fails to request relief that can be granted against Defendant Woods given that she no longer works for the State of Colorado, (2) he does not allege personal involvement in the alleged deprivation of due process, (3) there is no protected liberty interest in accessing DNA post-conviction, and (4) Plaintiff had adequate state process in previously seeking the requested relief. As such, Plaintiff failed to state a claim upon which relief can be granted and his Amended Complaint should be dismissed.

### 1. Plaintiff Cannot Receive the Requested Relief Against Defendant Woods Because She Does Not Have Custody or Control Over the Evidence Plaintiff is Seeking

As a threshold matter, Plaintiff cannot receive the injunctive relief he is seeking from Defendant Woods even if he prevails on his sole cause of action. Plaintiff seeks two forms of relief in this case: (1) a declaratory judgment stating that Defendant Woods violated his due process rights with respect to Plaintiff's desire to prove his innocence and/or establish a basis for post-conviction relief; and (2) an injunction requiring Defendant Woods to provide Plaintiff with access to the print and biological evidence in her control.  (ECF 39 at ¶¶ 3, 64.)

Plaintiffs request for injunctive relief seeks an "order directing Defendants (herein) to produce all evidence for DNA and print identification testing." (ECF 39 at ¶ 3.) Plaintiff makes several vague allegations about the Defendants' control over the specified evidence, including the allegation that the "[e]vidence collected in this case is in the possession of the Defendants (sic) and their respective agencies…." (ECF 39 at ¶ 51.) The only time Plaintiff makes a specific allegation against Defendant Woods regarding custody of the DNA evidence is when he states that "[u]pon information, Ms. Woods…may have custody and control of material evidence that may be tested for DNA." (ECF 39 at ¶ 9.) However, Defendant Woods is no longer a Colorado Bureau of Investigation ("CBI") employee and is not performing forensic testing, a fact that plaintiff acknowledges in his Amended Complaint. (ECF 39 at ¶ 61.)[2] As such, Defendant Woods is not in possession of any pieces of physical evidence that could potentially be subject to biological testing. Defendant Woods cannot be compelled to allow access to materials that are not in her custody or control. Therefore, Plaintiff has not stated a claim upon which relief can be granted against Defendant Woods.

### 2. Plaintiff Has Not Plausibly Alleged a Conspiracy in the Amended Complaint

To succeed on a 42 U.S.C. § 1983 conspiracy claim, the plaintiff must show: "(1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). Conclusory and speculative allegations of conspiracy

---

[2] Defendant Woods disputes that she was fired as alleged in paragraph 61 of Plaintiff's Amended Complaint and is unclear on Plaintiff's Rule 11 basis for making such an allegation.

are insufficient to state a valid Section 1983 claim. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1994). Instead, a plaintiff must "allege specific facts showing agreement and concerted action among defendants." *Id.*

Here, Plaintiff has not sufficiently pled any of the elements of a Section 1983 conspiracy claim against Defendant Woods. Throughout his Amended Complaint, Plaintiff only makes vague allegations of "conspirator conduct" by the Defendants. His only direct allegation against Defendant Woods is that she conspired with local law enforcement to prevent testing of biological evidence that could substantiate Plaintiff's innocence. (ECF 39, ¶ 9). However, Plaintiff does not specifically allege any agreement between Defendant Woods and any other Defendant or specify what conduct constitutes concerted action in furtherance of this agreement by Defendant Woods. Further, Plaintiff did not even attempt to plead a claim for conspiracy under Section 1983 in his Amended Complaint. (*See* ECF 39 at ¶ 50 ("Noting…the conspirator conduct is not the subject of this litigation…")) Plaintiff's failure to show any involvement by Defendant Woods in a shared conspiratorial objective, concerted action, or an actual deprivation of rights shows that a plausible conspiracy claim cannot exist.

### 3. The Complaint Does Not Plausibly Allege a Procedural Due Process Violation

"Procedural due process[3] imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of

---

[3] Plaintiff does not clarify whether he is alleging both procedural and substantive due process. However, the Supreme Court has declined to extend the concept of substantive due process to recognize a freestanding right to DNA evidence. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72(U.S. 2009) ("Osborne seeks access to state evidence so that he can apply new DNA-testing technology that might prove him innocent. There is no long history of such a right, and [t]he mere novelty of such a claim is reason enough to doubt that substantive due process sustains it." (internal quotations removed)). As such, this Motion only addresses a procedural due process claim.

the…Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, (U.S. 1976) (quotations omitted). In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125–26(U.S. 1990).

To show a due process violation, a plaintiff must allege facts showing (1) "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process." *Reed*, 598 U.S. at 236 (citation omitted).

### i. Plaintiff Did Not Allege Personal Participation by Defendant Woods in the Alleged Post-Conviction Deprivation of His Due Process Rights

Generally, a "defendant sued in an individual capacity may be subject to personal liability…." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997)). Personal liability under Section 1983 "must be based on <u>personal involvement</u> in the alleged constitutional violation." *Id.* (emphasis added).

Here, Plaintiff alleges that Defendants (plural and general) have denied him access to certain evidence from the underlying criminal investigation and prosecution, which he seeks to be able to conduct additional post-conviction testing. (*See* ECF 39 at ¶ 58.) However, as noted above, Defendant Woods was not the custodian of this evidence, nor could she possibly access such evidence going forward given that she no longer works for the CBI. (ECF 39 at ¶ 61.) Further, Plaintiff previously sought access to this evidence through the state courts by filing a petition requesting additional testing. (ECF 39, Ex. B at ¶¶ 10–11.) Plaintiff's Amended Complaint does

9

not allege in any way that during this process and after the denial of his State Court petition, Defendant Woods played any role in depriving Plaintiff of access to any evidence.

### ii. Plaintiff Did Not Allege Deprivation of a Protected Liberty Interest

To meet the first prong of a due process claim, the plaintiff must demonstrate the existence and deprivation of a protected property interest for which the plaintiff is constitutionally entitled to an appropriate level of process. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). While the underlying interest is generally created by state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (quotation omitted). In his Amended Complaint, Plaintiff alleges that he "has a liberty interest in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of sentence in clemency proceedings with the Governor of Colorado[4]…" by way of retesting certain DNA evidence from his 2002 criminal trial. (ECF 39 at ¶ 47.) However, the Supreme Court limited "the federal action a state prisoner may bring for DNA testing." *Skinner*, 562 U.S. at 525. The Court has also limited a prisoner's ability "to show that the governing state law denies him procedural due process." *Id.* (citing *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 522311 (U.S.2009) (internal citations omitted)).

---

[4] Plaintiff cannot rely on a potential clemency proceeding under Colorado state law to support his due process claim. *See Osborne,* 557 U.S. at 67–68, 129 S. Ct. at 2319. ("In identifying his potential liberty interest, Osborne first attempts to rely on the Governor's constitutional authority to grant pardons, commutations, and reprieves. That claim can be readily disposed of. We have held that noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is entitled as a matter of state law." (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464(U.S. 1981)).

In *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, the Supreme Court held that the defendant had a limited liberty interest in demonstrating his innocence with new evidence as provided for under Alaska state law but declined to recognize a freestanding right to DNA testing. *Osborne,* 557 U.S. at 67–68. There, the plaintiff alleged a due process right to access the evidence used against him in order to subject it to DNA testing. *Id.* The plaintiff relied on a state law that allowed a prisoner to use newly discovered evidence to establish their innocence and obtain vacation of their sentence. *Id.* However, the Court limited a convicted person's right to postconviction DNA testing to the confines of the applicable state laws governing this issue. *See Skinner,* 562 U.S. 521 524.

The Tenth Circuit relied on the *Osborne* holding in *McDaniels v. Suthers,* which addressed a prisoner's access to postconviction DNA testing via Colorado's statutory regime., C.R.S. § 18-1-411, *et seq.* There, the plaintiff petitioned the state trial courts for DNA testing pursuant to the relevant statutes. *McDaniel v. Suthers*, 335 Fed. Appx. 734, 735 (10th Cir. 2009). Based on the statutory criteria, the trial court denied the plaintiff's request. *Id.* The Court of Appeals affirmed the trial court's decision, and both the Colorado Supreme Court and the U.S. Supreme Court denied review. *Id.* The plaintiff then filed a Section 1983 claim seeking an injunction requiring the defendants to turn over biologic materials so that the plaintiff could have genetic testing done, but he was unsuccessful when the district court determined that he was not entitled to Section 1983 relief under a procedural due process theory. *Id.*

On appeal, the plaintiff argued that the district court failed to recognize that the "United States Constitution provides [him] a substantive and/or procedural due process right to access remaining, previously untested genetic materials in [his] criminal case which may or may not prove

11

his actual innocence." *Id.* Relying on *Osborne*, the Tenth Circuit noted that "there is no right under the Due Process Clause to obtain postconviction access to the State's evidence for DNA testing." *Id.* (citing *Osborne*, 557 U.S. at 60). *See also D'Amario v. Davis*, 2010 WL 537807, at *3 (D. Colo. Feb. 12, 2010) (noting that "a convicted prisoner does not have a freestanding constitutional right to postconviction access to DNA evidence, and…at most, a prisoner may have a procedural due process right to the proper application of a state-created right."). Moreover, while the Colorado statute does create "some post-conviction right to access biological evidence for DNA testing, this right is qualified to situations where the prisoner is able to demonstrate the [statutory] requisites." *McDaniel v. John Suthers*, 2008 WL 4527697, at *10 (D. Colo. Oct. 2, 2008), aff'd sub nom. *McDaniel v. Suthers*, 335 Fed. Appx. 734 (10th Cir. 2009).

Here, Plaintiff challenges the State Court rulings based on the allegation that he has a liberty interest in accessing materials for post-conviction DNA testing. (ECF 39 at ¶¶ 47–48.) However, the Supreme Court and Tenth Circuit have clearly disavowed any freestanding right to access materials for post-conviction DNA testing in *Osborne* and *McDaniel*, respectively. Notably, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. Rather, post-conviction rights may be qualified to situations that meet the applicable statutory requisites. *See McDaniel, v. Suthers,* 335 Fed. Appx. 734 (10th Cir. 2009). In this case, any liberty interest Plaintiff does possess in post-conviction DNA testing is limited by the requirements of C.R.S. § 18-1-413. Thus, Plaintiff has not sufficiently alleged the deprivation of a protected liberty interest that would entitle him to the due process he is seeking.

### iii. Plaintiff Did Not Allege a Lack of Adequate State Process

Even if Plaintiff did adequately plead deprivation of a protected liberty interest, he has not alleged a lack of adequate state process, and thus, his due process claim must fail.

Plaintiff bears the burden of demonstrating the inadequacy of state-law procedures available to him in state postconviction relief. *Osborne,* 557 U.S. at 71.In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. *Zinermon,* 494 U.S. at 125–26. When an individual has a protected interest, they are "entitled to some sort of hearing before the government acts to impair that interest, although the hearing need not necessarily provide all, or even most, of the protections afforded by a trial." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006) (citing *Eldridge*, 424 U.S. at 335). In fact, "due process is flexible and calls [only] for such procedural protections as the particular situation demands." *Id*. (internal quotation marks and brackets omitted). For example, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. "Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty" and "[t]he State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* (emphasis added). "[W]hen a State chooses to offer help to those seeking relief from convictions," due process does not "dictat[e] the exact form such assistance must assume." *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (U.S. 1987)).

In *Osborne,* the Supreme Court noted that, a convicted person's "right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been

found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.* There, because the defendant had already been convicted in state court, the Supreme Court reasoned that the State had "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. Notably, the Tenth Circuit has previously stated that there is "nothing inadequate about the procedures [Colorado] has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence." *McDaniel*, 335 Fed. App'x at 736 (applying C.R.S. §§ 18-1-411 to 416).

Here, Plaintiff relies on Colorado's statutory provisions for requesting retesting of DNA evidence. Colorado allows "[a]n incarcerated person [to] apply to the district court in the district where the conviction was secured for DNA testing concerning the conviction and sentence." C.R.S. § 13-1-412(2021).[5] Pursuant to C.R.S. § 18-1-413, a court <u>shall not</u> order DNA testing <u>unless</u> the petitioner demonstrates by a preponderance of the evidence that

> (a) Favorable results of the DNA testing will demonstrate the petitioner's actual innocence;
> (b) A law enforcement agency collected biological evidence pertaining to the offense; and retains actual or constructive possession of the evidence that allows for reliable DNA testing;
> (c)(I) Conclusive DNA results were not available prior to the petitioner's conviction and (II) The petitioner did not secure DNA testing prior to his or her conviction because DNA testing was not reasonably available or for reasons that constitute justifiable excuse, ineffective assistance of counsel, or excusable neglect; and
> (d) The petitioner consents to provide a biological sample for DNA testing.

C.R.S. § 13-1-412(1)(a)-(d) (2021) (emphasis added). "Actual innocence" means clear and convincing evidence such that no reasonable juror would have convicted the defendant." § 18-1-

---

[5] The General Assembly recently amended C.R.S. §§ 18-1-411–417, effective October 1, 2023. These changes only apply to petitions filed on or after this date. *See* CO LEGIS 15 (2023), 2023 Colo. Legis. Serv. Ch. 15 (H.B. 23-1034) (WEST).

411(1) (2021). "If the motion, files, and record of the case show to the satisfaction of the court that the petitioner is not entitled to relief based on the criteria in section 18-1-413, the court must deny the motion without a hearing or the appointment of counsel." C.R.S. § 18-1-412(3) (2021).

In March of 2020, Plaintiff filed a petition for new DNA testing alleging that a piece of the DNA evidence used to convict him was unreliable due to a break in the chain-of-custody and advances in DNA technology. (ECF 39, Ex. B at ¶ 10.) The trial court denied his petition, concluding that he failed to sufficiently allege two of the factual criteria required by section 18-1-413(1)(a) and (1)(c)(I). (ECF 39 Ex. B at ¶ 25.) The Colorado Court of Appeals agreed and affirmed the trial court's decision to deny DNA testing after reviewing the statutory requirements and finding that Plaintiff had not met those two elements. (ECF 39. at ¶¶ 22–31.)

Plaintiff has not alleged a lack of adequate state process. He admits that he filed a petition requesting retesting of the DNA evidence in accordance with the relevant statutes. (*See* ECF 39 at ¶ 54.) He also alleges that the statute, as applied in his case, has the potential to deny a person access to DNA evidence. *Id.* However, the denial of access to DNA evidence is not in itself unconstitutional. *See Zinermon,* 494 U.S. at 125–26. Further, the courts denied his access because he failed to comply with the requirements of C.R.S. § 18-1-411 *et seq*. Plaintiff does not have a right to DNA testing if he fails to follow the procedure for securing such testing. As detailed by the Colorado Court of Appeals, Plaintiff failed to meet two of the required elements, which resulted in the denial of his request. This is not sufficient to show inadequate state process. Further, the Tenth Circuit has noted that the procedures in Colorado's post-conviction DNA testing statute are sufficient to provide sufficient process to incarcerated persons seeking DNA testing. *See*

*McDaniel*, 335 Fed. App'x at 736. Thus, Plaintiff had access to adequate state procedures for post-conviction DNA testing, and his failure to follow them does not give rise to a due process violation.

## IV. CONCLUSION

WHEREFORE, Defendant Woods respectfully requests that the Court dismiss Plaintiff's Amended Complaint against her with prejudice.

DATED this 29th day of February 2024.

Respectfully submitted,

**OVERTURF McGATH & HULL, P.C.**

By *s/ Scott A. Neckers*
Scott A. Neckers
Steven W. Boatright
Sarah A. Thomas
Overturf McGath & Hull, P.C.
625 East Sixteenth Avenue, Suite 100
Denver, Colorado 80203
Tel: (303)860-2848
Fax: (303) 860-2869
san@omhlaw.com
swb@omhlaw.com
sat@omhlaw.com
*Attorneys for Defendant Yvonne M. Woods*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 29, 2024, I electronically filed the foregoing **DEFENDANT YVONNE M. WOODS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system with service as follows:

Kenneth Mark Burton
The Law Offices of Mark Burton
1175 Osage Street, Suite 210
Denver, CO 80204
Phone: (303) 517-1187
Fax: (303) 379-3922
Burtonslaw2000@yahoo.com
*Attorney for Plaintiff*

Alexander J. Dorotik
City of Lakewood
480 S. Allison Pkwy
Lakewood, CO 80226
(303) 987-7456
Fax: (303) 987-7671
adorotik@lakewood.org
*Attorney for Defendant Smith*

Rebecca P. Klymkowsky
Amy L. Padden
Jefferson County Attorney's Office
Assistant Deputy County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
rklymkow@jeffco.us
apadden@jeffco.us
*Attorney for Defendants Alexis King and Regina Marinelli*

*s/Jessica Pringle*