IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-CV-02989-DDD-MEH

JAMES HUNTER,

    Plaintiff,

v.

ALEXIS KING, et al.,

    Defendants.

---

## MOTION FOR TEMPORARY RESTRAINING ORDER

---

Plaintiff James Hunter, by and through council Kenneth Mark Burton, of the Law Office of Mark Burton, respectfully moves the court for Motion for Temporary Restraining Order pursuant to Fed. R. Civ. P. 65, and hereby submits this memorandum in support of this action.

### CERTIFICATE OF CONFERRAL

Undersigned counsel has conferred with Opposing Counsel for all the Defendants who have been given proper notice of this action and summarized the nature of this request. Opposing Counsel for all defendants oppose the relief requested in this motion.

## JURISDICTION

This action arises under the Constitution and law of the United States and is brought pursuant to the Title 42 U.S.C. §§ 1983. Jurisdiction is conferred on the Court pursuant to Title 28 U.S.C. § 1331 and 1343, and this action is brought pursuant to Fed. R. Civ. P. 65.

The facts alleged in the operative complaint, and the totality of circumstances compel the exclusive application of the jurisdiction of this court in the protection of Mr. Hunter's civil rights by enjoining the State of Colorado and the identified Defendants from infringing on his civil rights. [1]

## INTRODUCTION

Section 1 of the Fourteenth Amendment to the United States Constitution.

> Section l. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities or citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of law.

Generally, the Due Process clause of the Fourteenth Amendment does not control procedures in State Courts or regulate practices therein, premised on the notion that a state "is free to regulate procedures of its courts in accordance with its own conception of policy and fairness unless so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Holmes v. Conway, 241 U.S. 624, 631 (1916).

In this analysis of the Fourteenth Amendment, where the Plaintiff Mr. Hunter's civil rights

---

[1] The operative complaint is hereby incorporated by reference as if fully set forth herein, and specifically articulates the dynamics of this case supporting the entry of a Temporary Restraining Order.

are being compromised by the actions of State officials while acting under the color of state law, Mr. Hunter is justified and afforded a right to seek protection by the Federal government from his State Official's while acting under the color of state law. Mr. Hunter is also justified and afforded a right to seek protection from the federal government based on State Official's abusive actions.

A wrongfully convicted citizen should utilize all avenues available to obtain post-conviction DNA testing to prove his actual and factual innocence. What is particularly instructive here, is the United States Supreme Court's holding in Skinner v. Switzer, 562 U.S. 521 (2011). The Skinner v. Switzer Court held that a defendant could properly advance a claim pursuant to 42 U.S.C. §1983 to obtain the necessary DNA testing of evidence found at a crime scene in; especially, as here, where the defendant's efforts to obtain this relief through traditional post-judgment applications has been unsuccessful. The stakes, are certainly substantial given Mr. Hunter's virtual life sentence and declining health, including the diligent efforts being made by the Defendants to conceal and/or destroy exculpatory evidence. The Plaintiff Mr. Hunter respectfully moves the District Court to issue a Preservation Order to prevent the destruction or modification of exculpatory evidence. This is particularly urgent under the present dynamic, where numerous State Officials have recognized Mr. Hunter as an innocent person and see the consequences of their action leading to potential criminal charges, which upon belief has led to the recent loss and destruction of certain key pieces of evidence.

This Court must act to protect Mr. Hunter's civil rights by issuing an immediate preservation order and testing of the biological evidence in spirit with Due Process as prescribed by the Fourteenth Amendment. One needs not recount the dangers of prison in these precarious times, let alone those presented to an at-risk adult who is emotionally destroyed by the egregious injustices

that have transpired in the underlying state matter for the last two decades, as Jefferson County law enforcement actively worked to frame Mr. Hunter for the crimes of another.

In summary, while the executive and judicial branch in Colorado have wide discretion to respond to miscarriages of justice, that discretion still must comply with the Constitution. And "[i]f the government fails to fulfill this obligation the courts have a responsibility to remedy the resulting" constitutional violation. See e.g. Brown v. Plata, 563 U.S. 493, 511 (2011) ("Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration."). Requiring the government to act in line with Due Process, as this Court knows is required, does not amount to second guessing how to best do so or hoping that the Defendants will do what is right. The active efforts of the Defendants and State of Colorado to circumvent Due Process to maintain a wrongful conviction requires correction, not discretion here. Therefore, this Court should join the chorus of judicial voices and direct the Defendants to perform their legal duties under the Constitution and inherent authority of the Court to preserve all evidence and order its testing in spirit with Due Process pursuant to Fed. R. Civ. P. 65, and that an evidentiary hearing be set soon.

## LEGAL STANDARD

A Temporary Restraining Order is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." Winter v. NRDC, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "A plaintiff seeking a Preliminary Injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest." Id. at 20. The district court considered only the first requirement, the likelihood of success on the merits.

To grant a preliminary injunction, the Trial Court must find that the moving party has demonstrated: (l) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) lack of plain, speedy, and adequate remedy at law: (4) no disservice to the public interest; (5) balance of equities in favor of the injunction; and (6) preservation of the status quo or protection of a party's rights pending a final determination. Lundgrin v. Claytor, 619 F.2d 61, 62-63 (10th Cir. 1980); Rathke v. MacFarlane, 648 P.2d 648, 653-54 (Colo. 1982).

The Tenth Circuit has explained:

> In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that [she] will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger.

Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980).

When an applicant seeks a TRO, this test is expanded into four prerequisites that the moving party must establish:

> (l) a showing that the movant will suffer immediate and irreparable injury unless the injunction issues; (2) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) a substantial likelihood that the movant will eventually prevail on the merits; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

Lundgrin, 619 F.2d at 63. "'Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements' will be considered." DTC Energy Grp., Inc. v. Hirschfeld, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted).

The party seeking injunctive relief must show that the right to relief is clear and unequivocal. Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975).

To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical. Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003). In fact, the party seeking injunctive relief must show that the injury complained of is of such imminence that there is clear and present need for equitable relief to prevent irreparable harm. Id. (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985). The presumption of irreparable injury exists where constitutional rights are infringed. Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (Holding that the presumption of irreparable injury exists where plaintiff claimed that monetary relief would not properly redress the violation of his rights to free exercise of religion caused by previous denial of pastoral visits). Moreover, a showing of a bad faith prosecution or harassment is equivalent to a showing of irreparable injury for purposes of an injunction. Phelps v. Hamilton, 122 F.2d 885, 889 (10th Cir. 1997).

**ARGUMENT**

I.   **The Violation of Mr. Hunter's Due Process Rights Presents the Quintessential Circumstances in Which an Injunction is Required to Preserve the Status Quo.**

The state "is free to regulate procedures of its courts in accordance with its own conception of policy and fairness unless so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Holmes v. Conway, 241 U.S. 624, 631 (1916). The Prosecution of an innocent person meets the threshold requirements and is such an offense to the principles of justice deeply rooted in our nation's traditions, and violates the basic fundamentals of the Federal Constitution and human rights.

The State of Colorado and its officials have embarked on a persistent and pervasive effort to foreclose any review of Mr. Hunter's wrongful conviction because of his actual and factual innocence, and the discovery of the fabrication of hair evidence and an alternative suspect. Recently, these abusive acts have been focused on the concealment and destruction of evidence to prevent Mr. Hunter's legal team from effectively proving his actual and factual innocence through the testing of biological evidence and testing of forensic evidence through Federal data basis.

Because Mr. Hunter is actively being denied Due Process at the State Court level by the State of Colorado and its agents, the District Court should find that the Mr. Hunter has a Due Process right to prove his actual innocence through the testing of biological evidence and that a preservation order is required to ensure that he is afforded that opportunity.[2] Accordingly, injunctive relief is warranted and required to maintain the status quo. In absence of injunctive relief, a high probability exist that the evidence required to prove Mr. Hunter's innocence will be destroyed based on the Defendants current pattern of conduct and tack.

    **A.**    **Mr. Hunter is Properly Seeking to Advance a Claim Pursuant to 42 U. S. C. 1983 to Obtain the Necessary DNA Testing of Evidence Found at a Crime Scene Under the Rationale of Skinner v. Switzer, 562 U.S. 521 (2011), and Satisfies the Injunctive Relief Standard.**

---

[2] To clarify the Defendant and State Officials do not enjoy to the aegis of absolute immunity with respect to this action and the prospective relief sought. See e.g. Garronome v. Romo, (4 F.3d 1446, 1482 (10th Cir. 1998); Martinez. V. Winer, 771 F.2d 424 (10th Cir. 1985); Ex parte Young, 209 U.S. 123,159-60 (1908).

Here, Plaintiff Hunter's efforts at the State level to obtain the necessary DNA testing of biological evidence through traditional post-judgment applications has been unsuccessful, and rises to the level of a Due Process violation. Therefore, a Preservation Order and Order for Testing is required to effectively allow Mr. Hunter to substantiate his actual innocence to effectively collaterally attack his wrongful judgment or alternatively establish the injustice requirement through the clemency process.

### 1. Mr. Hunter Has a Substantial Likelihood of Success.

As an initial matter, to obtain a preliminary injunction under the applicable rules of civil procedure, the Plaintiff Mr. Hunter must substantiate the likelihood that he will eventually prevail on the merits with respect to his entitlement fair access to evidence for testing to effectively prove his innocence under either Colorado's post-conviction remedies or clemency review process. Lundgrin, 619 F.2d at 63. The Court's determination of the likelihood of success is within the sound discretion of the Court.

A meritorious Due Process violation claim is before the Court based on the denial of Due Process due to the deficiencies and the lack of fair process afforded to correct Mr. Hunter's wrongful conviction; specifically, the denial of access to exculpatory evidence for DNA testing e and comparison of other forensic evidence (fingerprints) with Federal data bases--AFIS. Indeed, Mr. Hunter has a liberty interest in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence under the rubric of the Fourteenth Amendment. By refusing to afford Mr. Hunter direct access to this evidence for independent testing, the State of Colorado and the Defendants have deprived him of Due Process and the ability to utilize Colorado's clemency process and post-conviction process to prove his actual and factual innocence.

First, to clarify Colorado courts have construed its statutory law to completely foreclose any prisoner who could have sought DNA testing prior to trial, but did not, from seeking testing postconviction. More specifically, Section 18-1-413(1) prohibits a court from ordering postconviction DNA testing "unless the petitioner demonstrates by a preponderance of the evidence that . . . [f]avorable results of the DNA testing will demonstrate the petitioner's actual innocence." Actual innocence is "clear and convincing evidence such that no reasonable juror would have convicted the defendant." § 18-1-411(1) C.R.S. 2019.

Moreover, the Petitioner was required to show that conclusive results were not available prior to the petitioner's conviction and, the petitioner did not secure testing prior to his or conviction because DNA testing was not reasonably available or for reasons that constitute justifiable excuse, ineffective assistance of counsel, or excusable neglect. § 18-1-413, C.R.S. 2019. This unfair process foreclosed the testing of biological evidence for DNA where evidence and testing was previously available, but subject to a less advanced and unreliable scientific method of testing, preventing actual innocence from being substantiated.

Secondly, Colorado has failed to provide Mr. Hunter direct access to material exculpatory biological evidence that has never been tested, which is required to effectively prove his actual and factual innocence with respect to the underlying crime for purposes of establishing the injustice factor for clemency proceedings.

The absence of a fair process at the State level has had the direct effect of depriving Mr. Hunter of his liberty interest in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence under the rubric of the Fourteenth Amendment. A meritorious Due Process claim is before the Court with supporting facts that present a high

probability of success, which naturally creates the quintessential circumstance in which Federal intervention is required to preserve Mr. Hunter's ability effectively prove his innocence.

Accordingly, the meritorious nature of Plaintiffs claims satisfies the first prong and weighs heavily in favor of the issuance of an injunction and issuance of a temporary restraining order for preservation of all forensic evidence.

> **a. Woods, King, and Schafer are actively working to conceal constitutionally evidence to permanently bar Mr. Hunter from collaterally attacking his conviction.**

The recent uproar of the state of Colorado employee Wood's intentional falsification of evidence to frame innocent citizens has presented a danger with respect to permanently barring Mr. Hunter from collaterally attacking his conviction. The defendants are actively working to separate Wood's from any involvement in state criminal processing, including that of Mr. Hunter. With the intent and the understanding to prevent disclosure of brady evidence. For instance, by firing Woods and stonewalling request for details regarding Wood's falsification of identification evidence, the defendants are preventing Mr. Hunter from effectively collaterally attacking his wrongful conviction. Indeed, Mr. Hunter is procedurally barred based on the collateral attack statue, C.R.S. § 16-5-402, and successive doctrine. And to overcome this procedural bar, Mr. Hunter is required to prove that the identification evidence used to sustain his conviction was invalid. Woods, Schaffer, King, Smith, and others possess this constitutionally material evidence. Therefore, an emergency restraining order is required to compel this information through depositions to preserve evidence and DNA testing of the rape kit. If Woods dies, is imprisoned, or leaves the state this evidence will be permanently concealed or lost. Woods currently possesses detailed unknown to anyone regarding the falsity of her forensic test results that resulted in the wrongful conviction of Mr. Hunter. The

dynamics of this case require a temporary restraining order to prevent a miscarriage of justice and irreparable harm to Mr. Hunter.

### 2. Mr. Hunter Will Suffer Irreparable Injury Unless This Injunction Issues.

Secondly, the Plaintiff Mr. Hunter bears the burden of substantiating that he will suffer irreparable injury unless an injunction is issued, and "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Heideman, 348 F.3d at 1189; Fish v. Kobach, 840 F.3d 710, 751 (10th Cir. 2016). For purposes of determining whether irreparable harm exists in adjudicating a motion for preliminary injunction, an injury may be irreparable where there exists no certain pecuniary standard for the measurement of damages. "It is also well settled that simple loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." Heideman, 348 F.3d at 1189. Moreover, and particularly relevant here, is that a showing of bad faith prosecution is equivalent to a showing of irreparable injury for purposes of an injunction. Younger v. Harris, 401 U.S. 37, 46 (1971); Phelps v. Hamilton, 122 F.3d 855, 889 (10th Cir. 1997).

A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. Where the Court finds that the Plaintiffs will likely succeed on the merits of a constitutional claim, plaintiff satisfies the irreparable harm requirement for issuing a preliminary injunction. While violation of a constitutional right is, itself, an irreparable harm, Mr. Hunter here faces the permanent denial of proving his actual innocence due to the progressive and escalatory actions of the defendants with respect to concealing and destroying exculpatory evidence.

### 3. There is No Plain, Speedy, or Adequate Remedy at Law.

Preventing irreparable harm from the permanent denial of Due Process by virtue of the destruction of exculpatory evidence cannot be achieved through damages, so the only adequate remedy at law is emergency injunctive relief.

### 4. The Public Interest is Served by Injunctive Relief.

Further, the Plaintiff must prove that the injunction, if issued, would not be adverse to the public interest. Granting relief will serve the public for several reasons. First, "it is always in the public interest to prevent the violation of a party's constitutional rights," as an injunction would do here. See Awad v. Ziriax, 670 F.3d 111, 1132 (10th Cir. 2012).

In this case, the Plaintiff is seeking to preserve the truth-seeking process and correct a miscarriage of justice through DNA testing, which is the only true way to prove that Mr. Hunter was framed by law enforcement. The Public has a vested interest in finding out the truth of whether Mr. Hunter is actually and factually innocent. Nothing is gained by closing our eyes to this miscarriage of justice and pretending that Due Process exists, where the Defendants are actively working to prevent the testing of biological evidence that will prove Mr. Hunter's actual and factual innocence. Society has never for a second accepted the notion that wrongfully convicted citizens belong being bars, and to deny a citizen his liberty interest in effectively proving his innocence through the testing of biological evidence is to intentionally violates a citizen's constitutional rights, which the Public has a vested interest in preventing. See Awad v. Ziriax, 670 F.3d 1111, 1132 (10th Cir. 2012).

### 5. Balance of Equities Favors Injunction.

Just as the public interest is served by the request for relief, the balance of equities favors injunction. The Defendants have no fair or logical rebuttal to this position that could shift this balance in favor of issuance of injunction.

The dynamics of this case balances the scale of equities in favor of issuance of injunctive relief to preserve the status quo. The State of Colorado's record of preserving exculpatory evidence and maintaining the chain of custody indicates that Plaintiff Mr. Hunter faces a high risk of permanently losing the ability to prove his innocence due to the Defendant's reckless conduct and deviant efforts to conceal that Mr. Hunter was framed by local law enforcement. There is no legitimate harm to the Defendants proposed by the injunction or preservation order. Although the Plaintiff acknowledges defendant's interest in retaining discretion to administer its agencies, "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of [state] administration." Brown v. Plata, 563 U.S. 493, 511, 131 S.Ct. 1910, 179 L. Ed. 2d 969 (2011).

## 6. Injunctive Relief is Necessary to Preserve The Status Quo.

A preliminary injunction is designed to preserve the status quo or protect the rights of the plaintiff pending the final determination of a cause. The "limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Schrier, 427F.3d at 1258 (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L. Ed. 2d 175 (1981)).

"The last uncontested status between the parties which preceded the controversy" is to be preserved. Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1155 (10th Cir. 2001). Here, the last uncontested status of the evidence, and the right needing protection, is the

preservation of the crime scene evidence and trial exhibits in their original state with appropriate chain of evidence logs accounting for all activity. Id.

## CONCLUSION

In summary, the Court should find that plaintiff has made a heightened showing that he is likely to succeed on the merits of this claims, that they will suffer irreparable harm in the absence of a temporary restraining order, and that the balance of equities and public interest tips in hisfavor. See RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009). Thus, plaintiff is entitled to a Temporary Restraining order, Including:

> A. That any and all defendants including their agents be restrained from modifying, concealing, and or destroying any evidence including biological evidence, related to the James Hunter criminal case, case number, 02CR354 (Jefferson County);
>
> B. That the defendants and their agents turn over all exculpatory or material forthwith, including: the complete and unredacted internal reports related to defendant Woods testing practices and or criminal activity;
>
> C. Leave to conduct deposition of each of the defendants including Yvonne Woods;
>
> D. Leave to conduct DNA testing of all biological evidence currently in the defendant's passion; and
>
> E. Access to a detailed report identifying each of the basis for Yvonne Woods release from Colorado Bureau of Investigations, including information related to the improper testing methods and protocols used in Mr. Hunter criminal case related to identification.

WHEREFORE, Plaintiff requests that the Court issue relief consistent with the attached proposed Order. Because the Plaintiff is indigent, and suing in the public interest, Plaintiff also requests that this Court waive bond. Fed. R. Civ. P. 65

## VERFICATON

I verify that the forgoing is true and correct to the best of my knowledge pursuant to 28 U.S.C. § 1746.

Respectfully submitted this 29th day of February 2024.

    /s K. Mark Burton
Kenneth Mark Burton
ATTORNEYAT LAW
The Law Office of Mark Burton,
1175 Street, Suite 210
Denver CO, 80204
Phone 303-517-1187
Fax 303-379-3922
Email: burtonslaw2000@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of February 2024, I served a true and correct copy of the foregoing: **MOTION FOR TEMPORARY RESTRAINING ORDER** with the Clerk of the Court by CM/ECF system and to all attorneys of record.

/s Kenneth Mark Burton
**Kenneth Mark Burton**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-CV-02989-DDD-MEH

JAMES HUNTER,

      Plaintiff,

v.

ALEXIS KING, et al.,

      Defendants.

---

**ORDER**

---

This matter is before the court on plaintiff's Motion for Temporary Restraining Order pursuant to Fed. R. Civ. P. 65. A sufficient showing for a Temporary Restraining order under Fed. R. Civ. P 65 have been made. Therefore, it is:

**ORDERED** that:

    A. The Plaintiff may depose the defendants in accordance with applicable rules of discovery Fed. R. Civ. P. 30;

B. Defendants shall turn over all forensic evidence for biological testing, including DNA testing:

C. Defendants shall produce a detailed report of the basis for Yvone Woods separation from The Colorado Bureau of Investigation including any information related to potential criminal charges and improprieties related to the James Hunter criminal matter, case number 02-CR-354 (Jefferson County): and

D. Defendants shall produce all exculpatory and impeaching evidence forthwith, including a complete and unredacted internal report regarding Mrs. Woods improper testing practices while working with the Colorado bureau of investigations;

E. The Defendant's respective agency and agents are enjoined from concealing, modifying, and or destroying any evidence related to the James Hunter matter, case number 02-CR-354 (Jefferson County): And

F. Parties Bound: This order itself is binding not only upon the named parties, but also upon their agents, employees, officers, servants, and upon those persons in active concert or participation with them who receive actual notice of this order, including:

1. Alexis King, District Attorney for the 1st Judicial District;
2. Chris Schaffer, Director of Colorado Bureau of Investigation
3. Reggie Marinelli, Sheriff of the Jeffersons County Sheriff's Department
4. Chief Wood, Lakewood Chief of Police
5. Yvonne M. Woods, Office, Laboratory Technician of the Colorado Bureau of Investigation; and

These parties and the like are bound by this restraining order in the forgoing respect, and are ordered to ensure that their staff, subordinates, officers, or other persons they act in concert with are notified of this injunction and restraining order, its restrictions, and requirements.

Dated: March   , 2024.

BY THE COURT:

_____

United State District Court Judge