IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02989-DDD-MEH

JAMES HUNTER,

    Plaintiff,

v.

ALEXIS KING, District Attorney for the First Judicial District, in her official capacity, et al.,

    Defendants.

---

### FIRST JUDICIAL DISTRICT ATTORNEY ALEXIS KING AND JEFFERSON COUNTY SHERIFF REGINA MARINELLI'S OPPOSITION TO PLAINTIFF'S "PETITION FOR PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65" [ECF 48]

---

In opposition to Plaintiff's "Petition for Preliminary Injunction" (the "PI Motion") [ECF48], District Attorney Alexis King and Jefferson County Sheriff Regina Marinelli (the "DA" and the "Sheriff," respectively; collectively, the "County Defendants") state as follows:

## BACKGROUND

As outlined in the County Defendants' Motion to Dismiss [ECF 43], over two decades ago, Mr. Hunter was arrested on, charged with, and convicted of various felony crimes. [ECF 39 ¶¶ 12-13]; *see also* Jefferson County Court Case 2002CR3254 Docket Report [ECF 43, Ex. A]. Mr. Hunter then pursued a series of appeals in Colorado's state courts, all of which have been unsuccessful, leaving his 2004 conviction intact. Most recently, in May 2022, the Colorado Supreme Court declined Mr. Hunter's petition for certiorari regarding a decision by the Colorado Court of Appeals denying Mr. Hunter's request for new DNA testing. *People v. Hunter*,

20CA0993 (Colo. App. Jan 27, 2022) (unpublished) ("COA Op."). This concluded his final state appeal effort, and his convictions stand. [ECF 39 ¶ 39.]

Mr. Hunter then filed this action, seeking a declaration that Defendants have violated his due process rights, as well as an order to preserve and provide Mr. Hunter with access to certain evidence for DNA testing. Defendants have unanimously filed motions to dismiss [ECF 41, 42, 47, 48], which have been referred to the Magistrate Judge [ECF 49].

Mr. Hunter's single due process claim alleges that the County Defendants, among others, conspired with unnamed individuals to prevent DNA sample testing and concealed information regarding identification evidence. [ECF 39 ¶¶ 5, 7, 43-63.] He also alleges that DA King attempted to "cover up" Defendant Woods' and others' "fabrication of evidence." [*Id*. ¶ 63.] The Amended Complaint is otherwise devoid of allegations against the County Defendants. Critically, Mr. Hunter does not allege the County Defendants personally participated in any alleged constitutional violation, other than vague allegations regarding a "cover up" of CBI Technician Woods' alleged errors, or that those alleged violations were a result of their policies or customs. (*See id*.) Nor does he identify any facts to support their involvement in a conspiracy or otherwise show a due process claim.

The County Defendants moved to dismiss on the grounds that the Sheriff's Office was not the law enforcement agency responsible for investigating or arresting Mr. Hunter, and it is not, and has never been, the custodian of any associated DNA evidence; the DA likewise is not, and has never been, the custodian of such evidence; *Heck v. Humphrey*, 512 U.S. 477, 478 (1994), the Rooker-Feldman Doctrine, *see Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldma*n, 460 U.S. 462 (1983), and res judicata bar Mr. Hunter's

claims; and Mr. Hunter has failed to allege sufficient facts to show a conspiracy or *Monell* liability. [ECF 43.]

On February 29, 2024, three-and-a-half months after filing the instant action, Plaintiff filed both a motion for a temporary restraining order ("TRO") and PI Motion. The following day, Judge Domenico denied the motion for TRO, finding that it "does not comply with Fed. R. Civ. P. 65(b) and seeks relief duplicative of that sought in [48] Petition for Preliminary Injunction." [ECF 52.] The County Defendants oppose the PI Motion as set forth below.

## STANDARD OF REVIEW

To obtain a preliminary injunction, the moving party must establish: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury to the moving party outweighs the harm that the relief may cause to the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002). A plaintiff seeking these extraordinary remedies must **prove** he is entitled to such relief by **clear and convincing evidence**. *Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army,* 111 F.3d 1485, 1489 (10th Cir. 1997) (emphasis added).

A higher standard applies to a motion seeking affirmative relief that would (1) disturb the status quo, (2) be mandatory rather than prohibitory, and (3) afford the movant substantially all the relief that he may recover after a full trial on the merits. *O Centro Espirita Beneficiente Unioa do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc). In such

circumstances, such as the relief sought against the County Defendants here,[1] the request for relief must be "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" and "a party seeking such an injunction must make a strong showing both with regards to the likelihood of success on the merits and with respect to the balance of harms." *Id*. at 975-76; *see Colorado v. EPA*, 989 F.3d 874, 884 (10th Cir. 2021) (quoting *id*.); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) ("[T]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." (internal quotations omitted)).

## ARGUMENT

**I.     THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE IT LACKS JURISDICTION OVER THE COUNTY DEFENDANTS.**

As explained in detail in the County Defendants' Motion to Dismiss, this Court lacks jurisdiction over the Sheriff and the DA under the Rooker-Feldman doctrine,[2] which precludes federal court challenge to a state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 531-33 (2011). The Rooker-Feldman doctrine applies where "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." *Skinner*, 562 U.S. at 531 (footnote omitted). The County Defendants' Motion to Dismiss sets forth this argument in detail. [ECF 43 at 4-7].

---

[1] Because the County Defendants are not the custodians the DNA evidence at issue, an injunction against them would presumably require affirmative action to determine the custodian and prevent destruction of any evidence. Thus, *O Centro* applies as the PI Moton relates to these Defendants.

[2] The County Defendants also argued that Plaintiff's claims are barred under the doctrine of *Heck v. Humphrey*. The Tenth Circuit has held that "it is arguable whether *Heck*'s limitation of 1983 suits is jurisdictional," *Johnson v. Spencer*, 950 F.3d 680, 697-98 (10th Cir. 2020), and therefore, this argument is addressed in Part II.A.2 below.

In apparent recognition that this Court may not order injunctive relief against a defendant over whom the Court does not have jurisdiction, Mr. Hunter's motion "clarifies that he is challenging only the constitutionality of Colorado's Post-Conviction DNA testing statute/procedures and the adequacy of access to biological material." [ECF 48 at 14.] But that "clarification" does not save his claims. *First and foremost*, that is not what his complaint, even as amended, alleges. The single Due Process claim is entitled "Denial of Access Constitutionally Material Evidence for DNA Testing." In that claim, Mr. Hunter makes no challenge to the constitutionality of a state law statute. Instead, he alleges that unidentified state actors are **violating** state law, **not** that the law itself is unconstitutional:

> The State of Colorado is currently using a false narrative and circumventing statutory law to procedurally bar Mr. Hunter from DNA testing untested biological evidence that will prove his factual and actual innocence. **This circumvention of Colorado law** has effectively deprived Mr. Hunter access to the very evidence needed to prove his factual and actual innocence.

[ECF 39 ¶ 49 (emphasis added); *see also id.* ¶ 54 ("Hunter meets all the requirements for DNA testing as required by C.R.S. [§] 18-1-413; however, Mr. Hunter was denied due process at the state level based on a false narrative and **circumvention of statutory law**." (emphasis added).]

The closest he comes to challenging the statute itself is where he "respectfully asserts that the current mechanism for DNA testing under C.R.S. 18-1-413 allows an innocent citizen to be denied access to DNA evidence when a judicial official uses a false narrative to substantiate a deficiency in the pleadings, despite a duty to liberally construe the pleadings of a pro se litigant." *Id*. But that stand-alone conclusory statement does not state a claim that the statute is unconstitutional.

5

*Second*, the relief he seeks is **not** a declaration that the state statute is unconstitutional. Instead, he requests the release of evidence for additional testing, which the Court of Appeals has already denied:

> A. Issuing declaratory relief, declaring that the acts and omissions of defendants are in violation of Plaintiff's Due Process rights to prove his innocence and/or fairly establish a basis for post-conviction relief, and declaring the defendants' duties with respect to those rights.
>
> B. Issuing injunctive relief, commanding the defendants provide Plaintiff access to the print evidence, print results and all biological evidence in their custody and control for the proper testing of DNA testing.

[ECF 39 ¶ 64.]

*Third*, the County Defendants are not proper defendants for a challenge to the constitutionality of state law, and Mr. Hunter has not complied with the notice requirements for such a challenge. 28 U.S.C. § 2403(b) provides:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality….

Federal Rule of Civil Procedure 5.1 implements that statutory provision by setting forth the following procedures:

> Constitutional Challenge to a Statute—Notice, Certification, and Intervention
>
> (a) NOTICE BY A PARTY. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
>
> > (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if: (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or (B) a state statute is questioned

6

>> and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
> (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.
>
> (b) CERTIFICATION BY THE COURT. The court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned.
>
> (c) INTERVENTION; FINAL DECISION ON THE MERITS. Unless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier. Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.

. . .

Although Chris Schaefer, CBI Director, has been named as a Defendant, his name is misspelled in the caption of the amended complaint, he has only recently waived service after attempts to serve him failed, his counsel had not yet appeared as of the time of the filing of the PI Motion, and the Complaint does not provide sufficient notice to him or the State that the constitutionality of the DNA testing statute is at issue. And, although Ms. Woods is also named as a Defendant, she has resigned from her position with CBI. Thus, no state official has been served with the PI Motion that contains Mr. Hunter's "clarification" that he challenges the constitutionality of a state statute. Under these circumstances, he should be required to comply with Rule 5.1.

## II. PLAINTIFF HAS NOT MET THE STANDARDS FOR OBTAINING INJUNCTIVE RELIEF.

Even if the Court had jurisdiction over the claims against the County Defendants, the Motion should be denied because he has failed to show he is entitled to the relief he seeks. For

7

the reasons stated below, the four factors do not tip strongly–or even slightly–in Mr. Hunter's favor. Therefore, the Court should deny his request for injunctive relief.

### A. There Is No Substantial Likelihood that Plaintiff Will Prevail on the Merits

Plaintiff bears the burden of alleging facts sufficient to state a claim. As detailed in the County Defendants' Motion to Dismiss and summarized here, the Amended Complaint fails to state a claim.

#### 1. Res judicata bars the claims.

Established res judicata principles bar Mr. Hunter's claims. *See Nwosun v. General Mills Restaurants*, 124 F.3d 1255, 1257 (10th Cir. 1997) (res judicata elements); *Bravo-Fernandez v. U.S.*, 580 U.S. 5, 11 n.2 (2016). The Rooker-Feldman doctrine complements the preclusion doctrine because it bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a federal district court that is based on the losing party's claim that the state judgment itself violates the loser's federal rights. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005).

Here, the Colorado Court of Appeals denied essentially the same relief Mr. Hunter seeks from this Court: additional DNA evidence testing. In affirming the state district court, the Court of Appeals held:

> Hunter didn't adequately plead that favorable DNA testing would demonstrate his actual innocence. Although he speculates that new DNA testing could establish that the prior testing of one of the samples (which supposedly had been contaminated during a break in the chain of custody) resulted in a false positive, that still wouldn't negate the other sample from the scene that also matched his DNA profile. Nor would it negate the other evidence that supported the jury's verdict—including, in particular, evidence that he was in the vicinity of the crime scene at the time of the crimes, that his body size and features matched those of the perpetrator, that he was wearing clothes that fit the description of those worn by the perpetrator, and that the adult victim recognized his voice.

> Thus, additional testing would not demonstrate actual innocence, as it would not provide clear and convincing evidence such that no reasonable juror would have convicted Hunter of the crimes.
>
> . . . His challenges to the sufficiency and admissibility of that evidence, which the trial court and divisions of this court have rejected multiple times, don't satisfy his burden under section 18-1-413(1)(c)(I).

[ECF 43, Ex. B (COA Op.) at ¶¶ 28-30].

Although Mr. Hunter has reframed that relief here slightly to seek an injunction preventing the destruction of DNA evidence, his claim nevertheless fails because he challenges the state court's ruling. *See Alvarez v. Attorney General for the State of Fla*., 679 F.3d 1257, 1262-63 (11th Cir. 2012) (Rooker-Feldman doctrine precluded § 1983 claim challenging state courts' resolution of plaintiff's post-conviction applications for DNA testing). Rather than permitting these claims to be relitigated in federal court, the Court should dismiss them. For that reason, Mr. Hunter cannot show a likelihood of success on the merits for his PI Motion.

2. ***Heck v. Humphrey* bars Mr. Hunter's claims.**

As explained in the County Defendants' Motion to Dismiss, *Heck v. Humphrey* requires this Court to consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. 477, 487 (1994). If it does, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*.

Here, the underlying convictions still stand, and the state courts have rejected Mr. Hunter's challenges to his conviction and his request for testing. Thus, Mr. Hunter has a valid, existing underlying conviction and sentence "tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007); *see Payton v. Ballinger*, 831 F. App'x 898, 901 (10th Cir. 2020) ("The district court properly applied the *Heck* doctrine to Payton's

claims. As noted, his claims challenge the validity of his rape convictions. Indeed, he requests DNA retesting, release from custody, and release from further prosecution."). Because Mr. Hunter's criminal convictions remain valid and because a judgment in his favor would necessarily imply the invalidity of those convictions, *Heck* bars his claims, and he cannot show a likelihood of success on the merits.

### 3. Plaintiff has not alleged facts showing a conspiracy.

The sole basis of the constitutional claims against the County Defendants is their alleged involvement in a conspiracy to misidentify Mr. Hunter as the perpetrator and to prevent DNA sample testing. [ECF 39 ¶¶ 5, 7, 62-63.] The elements for a § 1983 conspiracy claim are: "(1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1994); *see Bell Atl. Co. v. Twombly*, 550 U.S. 544, 556-57 (1994) ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Gee v. Pacheco,* 627 F.3d 1178, 1183 (10th Cir. 2010).

Here, Mr. Hunter has failed to plausibly allege a conspiracy claim because he lacks any allegations plausibly showing the County Defendants' involvement in a shared conspiratorial objective, concerted action, or actual deprivation of rights. Nor has Mr. Hunter alleged facts showing their actual participation in a conspiracy. Thus, he cannot show a likelihood of success on the merits for this reason as well.

### 4. Plaintiff cannot show a Due Process violation.

To show a due process violation, a plaintiff must allege facts showing: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted). Mr. Hunter has not alleged facts plausibly showing either element. While he has been deprived of his liberty, he has alleged no facts plausibly showing that the deprivation was unlawful or **a result of the County Defendants'** unconstitutional actions. As explained above, Mr. Hunter has received all process he was due during his trial, direct appeals, and collateral attacks on his convictions in state court.

Here, Mr. Hunter seeks to have this Court overrule the state courts by ordering state defendants to preserve and allow testing of DNA evidence. He has not taken the appropriate steps, or sued the proper defendants, to challenge the constitutionality of the statute. His claims against the County Defendants should be dismissed, and thus he cannot show a likelihood of success on the merits for this reason as well.

### 5. There is no viable theory of municipal liability.

Finally, the County Defendants' Motion to Dismiss shows that the Complaint fails to allege a plausible municipal liability claim. Mr. Hunter sued the County Defendants in their official capacities only. Under such a theory, a plaintiff must establish: (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see also Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (municipal liability requires plaintiff to (1) "identify a government's policy or custom" and (2) "show 'that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'" (quoting *id.*)).

Here, Mr. Hunter fails to establish any of the elements of a *Monell* claim. He fails to make even conclusory allegations identifying a policy or custom of either County Defendant. Because he cannot identify such a policy, he cannot show causation. And he makes no allegations whatsoever regarding either County Defendant's states of mind. Thus, Mr. Hunter cannot show a substantial likelihood of prevailing on the merits, requiring the Court to deny his PI Motion.

### B. Plaintiff Will Not Suffer Irreparable Harm If the County Defendants are Not Enjoined.

Mr. Hunter must also show that he **will** suffer irreparable injury if the injunction is not granted; he must **prove** that the injury he allegedly faces is both "certain and great," rather than simply "serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). Moreover, "the injury complained of [must be] of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier v. University of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (citations omitted).

Here again, there is **no evidence** to support the PI Motion as it relates to the County Defendants (or any of the other Defendants, for that matter). It contains no exhibits or declarations in support. His speculation, alone, is insufficient to support his claim for a preliminary injunction. *See Lippoldt v. Cole*, 468 F.3d 1204, 1218 (10th Cir. 2006) (speculative claims of future harm insufficient to support motion for preliminary injunction). The Colorado Court of Appeals has already found that, given the other evidence supporting his conviction, "additional testing would not demonstrate actual innocence, as it would not provide clear and convincing evidence such that no reasonable juror would have convicted Hunter of the crimes."

COA Op. ¶ 29. Given that decision, he cannot **show** that he will be irreparably harmed if the preliminary injunction is denied.

Mr. Hunter has also not shown that he is in **imminent danger** of any irreparable harm. His conviction has stood for over 20 years. There is no showing that the DNA evidence is seeking is in fact exculpatory, is in imminent danger of being destroyed, or that it is or has ever been in the County Defendants' possession. Plaintiff cannot show that his alleged harm is "imminent" based on his unfounded allegations. *See Schrier*, 427 F.3d at 1267. The Court should deny his PI Motion.

### C. The Balance of Hardships and Public Interest Do Not Favor Relief.

The final two factors–balance of hardships and public interest–do not tip in favor of Plaintiff. Again, he has failed to support his motion with any **evidence**. He wants the Court to order the DA and the Sheriff to ensure the preservation of evidence relating to a crime committed over 20 years ago, where there is no showing that the DA or the Sheriff ever had custody or control over that evidence and for which Plaintiff's conviction still stands despite numerous direct and collateral appeals. An injunction against the County Defendants would impose extreme hardship because it is unclear as to how the County Defendants could possibly comply with the order Mr. Hunter seeks. Moreover, it would open the door to countless other claims against County Defendants from inmates who have been prosecuted and convicted, claiming that new scientific methods would now show their innocence. And finally, it would undermine the integrity of the state judicial process, of which Mr. Hunter has availed himself, that has ultimately denied him the same relief he now seeks. The harm to the County Defendants and the public interest if the requested relief is granted outweighs any speculative harm that Plaintiff may face if this relief is denied as it related to the County Defendants.

# CONCLUSION

This Court should deny the Motion for Preliminary Injunction.

Respectfully submitted this 7th day of March, 2024.

                                                JEFFERSON COUNTY ATTORNEY'S OFFICE

                                                *s/Amy L. Padden*
Rebecca P. Klymkowsky
Assistant Deputy County Attorney
Amy L. Padden
Assistant County Attorney
100 Jefferson County Attorney's Office
Golden, Colorado 80419
T: 303.271.8900
E: rklymkow@jeffco.us
E: apadden@jeffco.us
*Attorneys for the District Attorney and the Sheriff*

Pursuant to DDD Civ. P.S. III(A)(1) and (A)(4), I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Court's Practice Standards that it contains no more than 4,000 words.

                                                */s/ Amy L. Padden*
Amy L. Padden

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, a copy of the foregoing was filed via ECF and served electronically on all counsel of record.

*s/ Amy Padden*
Amy Padden
