IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02989-DDD-MEH

JAMES HUNTER,

    Plaintiff,

v.

ALEXIS KING, District Attorney for the First Judicial District, in her official capacity, et al.,

    Defendants.

---

**FIRST JUDICIAL DISTRICT ATTORNEY ALEXIS KING AND
JEFFERSON COUNTY SHERIFF REGINA MARINELLI'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

---

In further support of their Motion to Dismiss [ECF 43], District Attorney Alexis King and Jefferson County Sheriff Regina Marinelli (the "DA" and the "Sheriff," respectively; collectively, the "County Defendants") state:

The County Defendants' jurisdictional and failure-to-state-a-claim arguments show that the Court should dismiss them, particularly since they do not have custody of the evidence at issue and the Sheriff was not involved in the underlying investigation or prosecution. Mr. Hunter continues to lump Defendants together, making generalized assertions to oppose dismissal. Indeed, the character of his claim continues to morph. While the Motion for a Preliminary Injunction asserts that Mr. Hunter "is challenging only the constitutionality of Colorado's Post-Conviction DNA testing statute/procedures and the adequacy of access to biological material"

1

[ECF 48 at 14], the Complaint alleges, and the Response [ECF 62] continues to focus on, conspiracies to **violate** state law.[1]

## ARGUMENT

I. **THIS COURT LACKS JURISDICTION UNDER *ROOKER-FELDMAN*.**

Although Mr. Hunter addresses this argument last [ECF 62 at 8-10], the Court must address jurisdictional issues first. As explained in the County Defendants' Motion, the *Rooker-Feldman* doctrine precludes this Court's review of a state court judgment.

Mr. Hunter relies primarily on *Skinner v. Switzer*, 562 U.S. 521, 531-33 (2011), arguing that his claims, like those of Mr. Skinner, could proceed because "it was not a direct attack on the State Court judgment, but merely a suit challenging a state rule or statute." [ECF 62 at 8.] Mr. Hunter's statement to the contrary, however, the allegations in this case are **not pleaded as an attack on a state rule or statute**.[2] [*See* ECF 58 at 5-7.]

---

[1] Mr. Hunter's due process claim alleges that the County Defendants, among others, conspired with unnamed individuals to prevent DNA testing and concealed information regarding identification evidence, and that the DA attempted to "cover up" Defendant Woods' and other' "fabrication of evidence." [ECF 39 ¶¶ 5, 7, 43-63] The Amended Complaint has no other allegations against the County Defendants.

[2] In particular:

(1) The single Due Process claim entitled "Denial of Access Constitutionally Material Evidence for DNA Testing" does not challenge the constitutionality of a state statute; it alleges that unidentified state actors are **violating** state law. [ECF 39 ¶ 49 (emphasis added); *see also id*. ¶ 54 ("Mr. Hunter was denied due process at the state level based on a false narrative and circumvention of statutory law." (emphasis added).]

(2) The relief he seeks is not a declaration that the state statute is unconstitutional but the release of evidence for additional testing, which the Court of Appeals has already denied. [ECF 39 ¶ 64.]

(3) The County Defendants are not proper defendants for a constitutional challenge, and Mr. Hunter has not complied with notice requirements. [ECF 58 at 5-7.]

A close reading of *Skinner* shows why Mr. Hunter's claims against the County Defendants cannot survive. In *Skinner*, a state prisoner sought DNA testing of crime-scene evidence in a Section 1983 action, pursuant to a state law passed after his conviction. 562 U.S. at 526-29. The *Skinner* Court held that Mr. Skinner was not required to bring such claims in a 28 U.S.C. § 2254 habeas corpus petition, rather than under Section 1983. *Id*. at 531-34.

While the *Skinner* Court ultimately concluded that *Rooker-Feldman* and *Heck* did not bar Mr. Skinner's claims, the limited nature of those claims was central to the Court's analysis:[3]

> At oral argument in this Court, Skinner's counsel clarified the gist of Skinner's due process claim: **He does not challenge the prosecutor's conduct or the decisions reached by the [Criminal Court of Appeals] in applying Article 64 to his motions**; instead, he challenges, as denying him procedural due process, Texas' postconviction DNA statute "as construed" by the Texas courts. Tr. of Oral Arg. 56. See also *id.,* at 52–53 (Texas courts, Skinner's counsel argued, have "construed the statute to completely foreclose any prisoner who could have sought DNA testing prior to trial[,] but did not[,] from seeking testing" postconviction).

*Id*. at 530. Here, Mr. Hunter **does** challenge the prosecutor's conduct. Thus, *Skinner* does not save his claims against the DA.

Moreover, Mr. Hunter **does** directly challenge the ruling of the Colorado Court of Appeals that he is not entitled to further testing. He has already proceeded and lost in state court seeking the release DNA evidence for additional testing. Unlike Mr. Skinner, Mr. Hunter now seeks to have this Court overrule the state appellate decision. The *Rooker-Feldman* doctrine plainly bars such relief:[4]

---

[3] Mr. Skinner challenged the state statutory procedures themselves that did not allow any post-conviction DNA testing where a request was not made pre-trial. *Id*. By contrast, Mr. Hunter does not challenge the DNA testing statute as unconstitutional. He instead claims that the County Defendants conspired to violate state and constitutional law.

[4] Mr. Hunter asked the state courts to order "new DNA testing" because "a piece of DNA evidence used to convict him was 'highly suspect due to [a] break in the chain-of custody' and was 'unconvincing in light of advances in DNA technology.'" [ECF 43, Ex. B, Opinion ¶ 10.]

3

> **To the extent plaintiff includes these allegations in his complaint to persuade this Court to review and overturn the state court rulings denying his request for relief under the Postconviction DNA Act, his complaint must be dismissed, in part, under the *Rooker-Feldman* doctrine**. *Skinner*, 562 U.S. [at 532]; *see also Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 789 (10th Cir. 2008) ("[A] complaint filed in a federal district court that seeks review and reversal of a state-court judgment is properly dismissed under *Rooker-Feldman*."). As previously discussed, the state district court determined that plaintiff failed to make the necessary showings under [the state statutes] to obtain postconviction DNA testing. In this action, plaintiff nevertheless asks this Court to require defendant to provide him access to the same evidentiary items he sought access to through the motion he presented in state court. But the *Rooker-Feldman* doctrine bars "state-court losers" from "inviting district court review and rejection of the state court's judgments." *Skinner*, 562 U.S. at 532 . . .
>
> Thus, to the extent plaintiff urges this Court to review and reverse the state court decisions denying his request for access to certain evidentiary items for DNA testing, *Rooker-Feldman* bars his claim….

*Huey v. Kunzweiler*, No. 20-CV-0021-CVE-FHM, 2020 WL 1325359, at *4-5 (N.D. Okla. Mar. 20, 2020) (emphasis added; footnote omitted), *aff'd*, 847 F. App'x 530 (10th Cir. 2021). As another district court in this Circuit held in *Pickens v. Kunzweiler*: "While the Court may consider challenges to state laws restricting individuals' access to potentially exculpatory DNA evidence on procedural due process grounds, this Court lacks subject matter jurisdiction to hear a suit directly challenging a state court's ruling." No. 15-CV-504-JHP-PJC, 2016 WL 1651821, at *3 (N.D. Okla. Apr. 25, 2016) (citing *Skinner*, 562 U.S. at 532).

      Here, Mr. Hunter unsuccessfully sought DNA testing in state court. His federal claim fails because he challenges the state court's ruling. *See Alvarez v. Attorney Gen. for the State of Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012) (*Rooker-Feldman* doctrine precluded § 1983 claim challenging state courts' resolution of post-conviction applications for DNA testing). Because the *Rooker-Feldman* doctrine applies to cases where "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment," *Skinner*,

4

562 U.S. at 531 (footnote omitted), which is exactly what Mr. Hunter seeks, the Court must dismiss his suit.

## II.   *HECK* AND RES JUDICATA ALSO BAR THESE CLAIMS.

Mr. Hunter claims that *Heck v. Humphrey* does not apply "because the extant criminal judgment is not directly being attacked here" and because he "has never requested release from custody or the reversal of his criminal judgment in this case." [ECF 62 at 7.] Here again, as explained above, the Amended Complaint and other filings show otherwise.

Despite his protestations to the contrary, Mr. Hunter's Complaint asserts his innocence and thus attacks the validity of his criminal conviction:

- DNA access will show his "actual" and "factual" innocence." [ECF 39 ¶¶ 1, 2, 3, 36.]
- Defendants are aware of his "actual and factual innocence." [*Id*. ¶¶ 5, 7.]
- Testing will identify an alternate subject, who Mr. Hunter asserts is the true perpetrator. [*Id*. ¶ 50.]

The issue for the *Heck* analysis is "whether a judgment in favor of the plaintiff **would necessarily imply the invalidity of his conviction or sentence**." *Id*. at 487 (emphasis added). Mr. Hunter's reliance on *Skinner* to avoid *Heck*'s bar fails for the reasons set forth above. He attempts to distinguish *Payton v. Ballinger*, 831 F. App'x 898, 901 (10th Cir. 2020), on the grounds that Mr. Payton sought release from prison in addition to DNA testing. [ECF 62 at 8.] But, as in *Payton*, Mr. Hunter has a valid, existing underlying conviction and sentence "tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007). He claims that the evidence will exonerate him, which would lead to his release. [ECF 39, ¶ 52 ("[t]he above identified biological evidence will link the alternative suspect to [the crime] ... and exonerate Mr. Hunter of any wrongdoing."); ¶¶ 57-59.] The Colorado Court of Appeals has

already denied Mr. Hunter's attempt to secure the exact relief he seeks here: additional DNA testing. Because Mr. Hunter's criminal convictions remain valid and a judgment in his favor would necessarily imply the invalidity of those convictions, *Heck* bars his suit.

Established res judicata principles also bar Mr. Hunter's claims. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005), holds that the *Rooker-Feldman* doctrine complements the preclusion doctrine by barring a losing party in state court from seeking review of the state judgment in a federal district court that is based on a claim that the state judgment itself violates the losing party's federal rights. Again, this is exactly the relief Mr. Hunter seeks: for this Court to permit additional DNA evidence testing in the face of the Colorado Court of Appeals' denial. This Court should dismiss his claim.

### III.     MR. HUNTER HAS NOT ALLEGED A DUE PROCESS CONSPIRACY CLAIM.

#### A.     The Complaint Does Not Plausibly Allege a Conspiracy.

Mr. Hunter does not address the Complaint's failure to plausibly allege the elements for a Section 1983 conspiracy claim: a shared conspiratorial objective, Defendants' concerted action, and a deprivation of rights. *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990). Instead, he simply asserts that the County Defendants "are administrative heads of their respected [sic] agencies with final decision-making authority" and that they are involved in the review of cases in which Ms. Woods testified. [ECF 62 at 6-7.] But those unadorned allegations do not state any claim, much less a conspiracy claim brought under *Monell*. *See*, *e.g.*, *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."); *Gee v. Pacheco,* 627 F.3d 1178, 1183 (10th Cir. 2010) ("[A]n allegation of parallel conduct absent context implying a meeting of the minds is, by itself, insufficient to withstand a motion to dismiss.").

**B.   The Amended Complaint Does Not Allege Facts Showing A Due Process Violation.**

A colorable due process claim requires Mr. Hunter to show both a deprivation by state action of a protected interest and inadequate state process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Rather than satisfying either element, Mr. Hunter erroneously reframes the issue as whether Defendants "have the ability to end the constitutional violation if so ordered." [ECF 62 at 5.] This argument is based on an incorrect reading of the facts and law.

First, Mr. Hunter still must plead facts plausibly showing both elements of the single claim that he seeks to bring and has failed to do so. Second, there are no facts showing that either County Defendant has the authority to end the alleged constitutional violation if ordered. Mr. Hunter persists in his claims against the Sheriff, even though there is no dispute that the Sheriff was not involved in this investigation or prosecution. Similarly, there are no facts alleged showing that the DA has, or ever has had, possession of the evidence at issue.

Finally, Mr. Hunter's mistakenly relies on *Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996). That out-of-circuit case involved an Eighth Amendment (not due process) claim by an incarcerated individual against the Superintendent of his housing facility. *Id*. at 87. The Second Circuit's unremarkable holding, which is wholly inapplicable here, was that an Eighth Amendment claim could proceed under those circumstances:

> [T]he complaint also sought injunctive relief against Dalsheim, and dismissal of that claim was not warranted. As the Superintendent of Downstate, Dalsheim had overall responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need. . . . If he can prove his contentions, he may well be entitled to injunctive relief.

*Id.* at 89. The Court should dismiss the County Defendants.

C.	Mr. Hunter Fails To State A Claim For Municipal Liability.

It is axiomatic that government entities, including government officials sued in their official capacities, are liable only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id*. at 694.

In response, Mr. Hunter makes the quizzical assertion that because his suit does not seek damages, *Monell* does not apply. [ECF 62 at 7.] He cites no authority in support of this proposition because there is none. To the contrary, it is well settled that *Monell* applies to **all** municipal liability claims, regardless of the relief sought.

In *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29 (2010), the U.S. Supreme Court addressed this exact question. In that case, parents who had been arrested and subsequently exonerated on child abuse and torture charges brought a Section 1983 action against state and county officials, alleging that their continued listing in California's child abuse registry violated due process. *Id*. at 31-32. The *Humphries* Court noted that *Monell* itself "explicitly stated, '[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, *declaratory, or injunctive relief* where, as here, the action that is alleged to be unconstitutional implements or executes' a policy or custom." *Id*. at 37 (quoting *Monell*, 436 U.S. at 690 (emphasis from *Humphries*)). The Court explained:

> The *Monell* Court thought that Congress intended potential § 1983 liability where a municipality's *own* violations were at issue but not where only the violations of *others* were at issue. The "policy or custom" requirement rests upon that distinction and embodies it in law. To find the requirement inapplicable where prospective relief is at

issue would undermine *Monell*'s logic. For whether an action or omission is a municipality's "own" has to do with the nature of the action or omission, not with the nature of the relief that is later sought in court.

*Id*. at 37. Thus, the Court concluded: "we hold that *Monell'*s "policy or custom" requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective." *Id*. at 39. There is no question that *Monell* applies here. Because Mr. Hunter has not alleged facts establishing the elements of a *Monell* claim, he has failed to state a claim.

Respectfully submitted this 12th day of March, 2024.

JEFFERSON COUNTY ATTORNEY'S OFFICE

 s/Amy L. Padden
Rebecca P. Klymkowsky
Assistant Deputy County Attorney
Amy L. Padden
Assistant County Attorney
100 Jefferson County Attorney's Office
Golden, Colorado 80419
T: 303.271.8900
E: rklymkow@jeffco.us
E: apadden@jeffco.us
*Attorneys for the District Attorney and the Sheriff*

Pursuant to DDD Civ. P.S. III(A)(1) and (A)(4), I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Court's Practice Standards that it contains no more than 2,700 words.

 /s/ Amy L. Padden
Amy L. Padden

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, a copy of the foregoing was filed via ECF and served electronically on all counsel of record.

*s/ Amy Padden*
Amy Padden
