## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-2989-DDD-MEH

JAMES HUNTER

      Plaintiff,

v.

ALEXIS KING, District Attorney for the 1st Judicial District, in her official capacity,

CHRIS SCHAFFER, Director of the Colorado Bureau of Investigation, in his official capacity,

REGGIE MARINELLI, Sherrif of the Jefferson County Sheriff's Department, in his official capacity,

CHIEF SMITH, Chief of Police for the Lakewood Police Department, in his official capacity; and,

YVONNE M. WOODS, Officer, laboratory technician of the Colorado Bureau of Investigation in her individual capacity,

      Defendants.

___

### DEFENDANT YVONNE WOODS'S REPLY IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
___

Defendant Yvonne M. Woods, by and through her attorneys Overturf McGath & Hull, P.C., hereby submits her Reply in Support of her Motion to Dismiss Plaintiff's First Amended Complaint (ECF 47), and in support states as follows:

### I.    INTRODUCTION

Defendant Woods filed her Motion to Dismiss on the grounds that Plaintiff's First Amended Complaint fails to state a claim upon which relief could be granted under either a

conspiracy or due process theory and is barred under the *Rooker-Feldman* doctrine for seeking review of a state court judgment. (*See* ECF 47.) In his Response, Plaintiff failed to address whether his Due Process claim was properly pled and added additional factual allegations that were not present in the First Amended Complaint. (ECF 62). Plaintiff also failed to support any potential claim alleging a conspiracy among Defendants to deprive him of his due process rights beyond simply citing his First Amended Complaint. Further, Plaintiff's only defense against the *Rooker-Feldman* doctrine is that his claims are new because the due process issue was not decided by the state courts. For the reasons outlined in her Motion to Dismiss and discussed below, Defendant Woods respectfully requests that the Court dismiss Plaintiff's claim against her with prejudice for failure to state a claim and lack of subject matter jurisdiction.

II.   **ARGUMENT**

**A. PLAINTIFF MAY NOT AMEND HIS FIRST AMENDED COMPLAINT THROUGH HIS RESPONSE TO THE MOTIONS TO DISMISS**

It is well settled that a plaintiff may not amend his complaint through briefs in opposition to a motion to dismiss. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (superseded by statute on other grounds), accord *The 198 Tr. Agreement, Dated December 15, 2010 v. CAAMS, LLC*, 14-CV-01264-RM-KMT, 2015 WL 1529274, at *5 (D. Colo. Mar. 30, 2015). Despite filing a twenty-two page First Amended Complaint, Plaintiff continues to impermissibly raise new factual allegations in his Response brief. (ECF 62.) Plaintiff's request for injunctive relief in his First Amended Complaint only seeks access to "the print evidence, print results and all biological evidence in their custody and control for the proper testing of DNA testing." ECF 39 at ¶ 64(B). Now Plaintiff alleges that Defendant Woods "has private information

2

related to her corrupt testing practices" and that her "personal notes and correspondence contain details that will substantiate the underlying conspiracy to violate [Plaintiff's] civil rights" in his Response, but did not make this allegation in the First Amended Complaint. (ECF 62 at p. 6, n. 1.)

### B. PLAINTIFF FAILED TO ALLEGE PERSONAL PARTICIPATION BY DEFENDANT WOODS

Plaintiff may not rely on a lesser pleading standard simply because he is requesting injunctive relief rather than damages. As noted in Defendant Woods's Motion to Dismiss (ECF 47 at p. 9–10), "[p]ersonal participation is an essential element in a civil rights action." *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *Id.* (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997).

Plaintiff cites several cases involving official capacity suits where the defendant was a representative of the entity that was responsible for the constitutional violations. The instant case can be distinguished from those cited in support of Plaintiff's allegations that he does not need to plead actual involvement by Defendant Woods. In *Leer v Murphy,* the Ninth Circuit's analysis of "the combined acts or omissions of…state officials" was done in the context of an Eighth Amendment deliberate indifference claim which was brought against "a myriad of prison personnel responsible for operating a prison." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). These are markedly different circumstances than those in this case, where Plaintiff alleges violation of his Fourteenth Amendment due process rights against select individuals who he

believes have access to the disputed evidence. Further, any official-capacity claim against Defendant Woods would be against the Colorado Bureau of Investigation ("CBI"), which Defendant Woods no longer represents.

In *Houston v. Sheahan,* the only remaining claims sought damages for overcrowding at a jail. *Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir. 1995). Even though the claims for injunctive relief were moot, the Seventh Circuit acknowledged that, "in an <u>official-capacity action</u> seeking an injunction, where the [defendants] are stand-ins for the political bodies they serve," the defendants could be ordered to take appropriate action making them appropriate stand-ins for the entities they represented. *Id.* (emphasis added). Similarly, in *Luckey v. Harris,* the Eleventh Circuit explained that "[p]ersonal action by defendant individually is not a necessary condition of injunctive relief against state officers in their <u>official capacity</u>" in analyzing the applicability of sovereign immunity and the *Ex Parte Young* doctrine. *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) (emphasis added). The Eleventh Circuit also noted that the official must have been responsible for the challenged action to be named in their official capacity. *Id.*

Here, it is unclear whether Plaintiff intended to sue Defendant Woods in either her individual or official capacities, or both. The caption indicates Defendant Woods is only being named in her individual capacity, but Plaintiff later states that Defendant Woods is being sued in her official capacity. (ECF 39 at ¶ 9.) In terms of her individual capacity, Defendant Woods's personal liability must be premised on her personal involvement in the alleged constitutional violations. *See Montoya*, 662 F.3d at 1163. It is not sufficient to allege general participation in a conspiracy or due process violation for Defendant Woods to be held personally liable to Plaintiff. In terms of her official capacity, Defendant Woods cannot be a stand-in for the CBI if injunctive

relief is granted because she is no longer employed by the CBI and cannot provide access to any evidence. As Plaintiff points out in his response, injunctive relief requires that the defendant has the ability to end a constitutional violation if so ordered. (ECF 62 at p. 5 citing *Kohel v. Dalsheim,* 85 F.3d 86, 89 (end Cir. 1996)). Accordingly, any official capacity claim against Defendant Woods cannot be successful given her inability to remedy the alleged failure to provide evidence for post-conviction testing.

### C. PLAINTIFF HAS NOT STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### 1. Conspiracy

"For a valid § 1983 conspiracy claim, plaintiffs 'must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (quoting *Snell v. Tunnell*, 920 F.2d 670, 701 (10th Cir. 1990). Once this threshold is met, a plaintiff must then allege the following: "(1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). Most importantly, a plaintiff must " allege specific facts showing agreement and concerted action among defendants. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1994).

Plaintiff states that he properly pled a claim for conspiracy to violate his Due Process rights against Defendants. However, his First (and only) Claim for Relief is for "denial of Due Process" related to the "denial of access of constitutionally material evidence for DNA testing," and lists the elements of a due process claim. Additionally, Plaintiff's headings correspond with the

5

elements of a procedural due process claim, deprivation of a protected liberty interest and inadequate state process, but do not make any mention of the elements of a Section 1983 conspiracy claim. Plaintiff's only allegation related to a potential conspiracy claim is that Defendants generally have conspired to "stonewall litigation." (ECF 39 at ¶¶ 62–63.) This single allegation is not sufficient to show any agreement among Defendants and does not sufficiently allege any concerted action by Defendants as required in a Section 1983 conspiracy claim. Thus, Plaintiff has not stated a proper conspiracy claim that rises above conclusory and speculative allegations of conspiracy. *See Tonkovich*, 159 F.3d at 533.

### 2. Due Process

Although Plaintiff argues that his Due Process claim is not subject to preclusion law, he entirely ignores Defendant Woods's allegation that he has failed to state a claim for violation of his Due Process rights. Typically, to show a due process violation, a plaintiff must allege facts showing (1) "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted). Here, Plaintiff alleges that he has a liberty interest in using state procedures to reverse his conviction, namely, Colorado's post-conviction DNA testing statute and that the state courts are denying him procedural due process. (*See* ECF ¶¶ 32, 47–48.)

However, both the Supreme Court and the Tenth Circuit have held that there is no freestanding right to access materials for post-conviction DNA testing. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 522311 (U.S.2009); *McDaniel v. Suthers*, 335 Fed. Appx. 734, 735 (10th Cir. 2009). The Supreme Court has also limited a prisoner's ability to "show that the governing law denies him procedural due process" in cases like this one. *See Skinner v.*

6

*Switzer*, 562 U.S. 521, 525 (2011). At most, a plaintiff may have a procedural due process right to the application of a state-created right, but that right is limited by the state's applicable statutory requisites. *See McDaniel, v. Suthers*, 335 Fed. Appx. 734 (10th Cir. 2009); *D'Amario v. Davis,* 2010 WL 537807, at *3 (D. Colo. Feb. 12, 2010).

Here, Plaintiff challenges the State Court rulings based on the allegation that he has a liberty interest in accessing evidence for post-conviction DNA testing. (ECF 39 at ¶¶ 47–48.) However, Plaintiff has already been convicted by a jury and incarcerated meaning he "does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. Instead, any request for post-conviction DNA testing must meet the statutory requirements outlined in C.R.S. § 18-1-413. Plaintiff already requested access to evidence related to his criminal conviction pursuant to this statute, and was denied for failing to meet the statutory criteria. (ECF 39 Ex. B at ¶ 25.) As such, Plaintiff has not alleged a deprivation of any protected liberty interest that would support his Due Process claim.

Additionally, Plaintiff bears the burden of demonstrating the inadequacy of state-law procedures available to him in state postconviction relief. *Osborne*, 557 U.S. at 71. Generally, a state "has "flexibility in deciding what procedures are needed in the context of postconviction relief." *Osborne*, 557 U.S. at 68. The State of Colorado has provided a mechanism to pursue post-conviction DNA testing at C.R.S. § 18-1-411, *et seq.* Notably, the Tenth Circuit has previously stated that there is "nothing inadequate about the procedures [Colorado] has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence." *McDaniel*, 335 Fed. App'x at 736 (applying C.R.S. §§ 18-1-411 to 416).

7

Here, Plaintiff was never denied access to Colorado's statutory process for seeking additional DNA testing following a conviction. Rather, Plaintiff filed a petition requesting this relief which was then denied by the trial court because Plaintiff failed to meet the requirements outlined in the statute that would have allowed for additional testing. (ECF 39 Ex. B at ¶ 25.) The Colorado Court of Appeals agreed with the trial court's application of the statute and found that Plaintiff did not meet two of the four statutory requirements. (ECF 39. at ¶¶ 22–31.) Thus, Plaintiff cannot show a lack of adequate state process that would support his Due Process claim.

### D. THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFF'S CLAIM ON JURISDICTIONAL GROUNDS

In his Response, Plaintiff misapplies the holding in *Skinner v. Switzer* in an attempt to avoid the bar of his claims under the *Rooker-Feldman* doctrine. In *Skinner,* the Supreme Court explained that a federal court may not review a state-court decision, but it may hear a challenge to a state statute or rule. *See Reed v. Goertz*, 143 S. Ct. 955, 961 (2023) (citing *Skinner*, 562 U.S. at 532). Despite citing this proposition in his Response, Plaintiff failed to challenge any state rule or statute in his First Amended Complaint. Instead, the basis of Plaintiff's First Amended Complaint is that Colorado state courts are denying him procedural due process in their application of the post-conviction DNA testing statute and that the statute, as applied in this instance, is unconstitutional. (ECF 39 at ¶ 32.) This argument is distinct from *Skinner,* where the plaintiff did not challenge the decisions reached by the court. While Plaintiff's issues arise out of his criminal conviction, he is challenging how state courts have denied him access to additional DNA testing following this conviction. (*See* ECF at ¶¶ 32, 49.) Plaintiff does not argue in either his First Amended Complaint or his Response brief that he is challenging any rule or statute. Instead, he only claims that the

8

Colorado statute is not being followed. (ECF 39 at ¶ 39.) Regardless of the allegations that Defendants are conspiring to prevent him from accessing biological evidence related to his criminal conviction, the state courts made the decision that Plaintiff did not meet the statutory criteria to access such evidence.

To the extent that Plaintiff is seeking access to evidence from his conviction for further testing, he already has a remedy in Colorado State Court, and his request is improper for the Federal Court. Plaintiff alleges that he only recently learned of the alleged misconduct by Defendant Woods. (ECF 62 at p. 10.) If true, this new information should be used to petition the state trial court for additional DNA testing pursuant to C.R.S. § 18-1-413, and not for injunctive relief in federal district court. Until Plaintiff files a new petition and is denied the requested relief, there is no basis for asserting an entitlement to further DNA testing in this Court.

### III.    CONCLUSION

WHEREFORE, Defendant Woods respectfully restates her request that the Court dismiss Plaintiff's Amended Complaint against her with prejudice.

DATED this 12th day of March 2024.

        Respectfully submitted,

        **OVERTURF McGATH**
        **& HULL, P.C.**

      By  *s/  Scott A. Neckers*
        Scott A. Neckers
        Steven W. Boatright
        Sarah A. Thomas
        Overturf McGath & Hull, P.C.
        625 East Sixteenth Avenue, Suite 100
        Denver, Colorado 80203
        Tel: (303)860-2848
        Fax: (303) 860-2869
        san@omhlaw.com
        swb@omhlaw.com
        sat@omhlaw.com
        *Attorneys for Defendant Yvonne M. Woods*

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on March 12, 2024, I electronically filed the foregoing **DEFENDANT YVONNE WOODS'S REPLY IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system with service as follows:

Kenneth Mark Burton
The Law Offices of Mark Burton
1175 Osage Street, Suite 210
Denver, CO 80204
Phone: (303) 517-1187
Fax: (303) 379-3922
Burtonslaw2000@yahoo.com
*Attorney for Plaintiff*

Alexander J. Dorotik
City of Lakewood
480 S. Allison Pkwy
Lakewood, CO 80226
(303) 987-7456
Fax: (303) 987-7671
adorotik@lakewood.org
*Attorney for Defendant Smith*

Rebecca P. Klymkowsky
Amy L. Padden
Jefferson County Attorney's Office
Assistant Deputy County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
rklymkow@jeffco.us
apadden@jeffco.us
*Attorney for Defendants Alexis King and Regina Marinelli*

Kelley M. Dziedzic
Assistant Attorney General II
Cole J. Woodward
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
T: 720-508-6647 (Dziedzic)

T: 720-508-6602 (Woodward)
Kelley.Dziedzic@coag.gov
Cole.Woodward@coag.gov
Attorneys for Defendant Chris Schaefer

                                                       *s/Jessica Pringle*