## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:23-cv-02989-DDD-MEH

JAMES HUNTER,

      Plaintiff,

v.

ALEXIS KING, District Attorney for the 1st Judicial District, in her official capacity;

CHRIS SCHAFFER, Director of the Colorado Bureau of Investigation, in his official capacity;

CHIEF SMITH, Chief of Police for the Lakewood Police Department, in his individual capacity;

YVONNE M. WOODS Officer, laboratory technician of the Colorado Bureau of Investigation, in her individual capacity;

      Defendants.

---

## ORDER

---

In this case, Plaintiff alleges that Defendants violated his due process rights by colluding to prevent him from conducting DNA testing on certain evidence that was used to convict him over twenty years ago. (Doc. No. 39.) Though Colorado state courts already denied his petitions under the state's postconviction DNA statute, he now seeks an order in federal court requiring Defendants to allow him to conduct the same DNA testing he already sought in state court and a declaration that the named Defendants violated his constitutional rights. (*Id.* at ¶ 64.) Because Plaintiff's suit essentially amounts to appeal of issues he already litigated in state court, however, it must be dismissed.

- 1 -

## BACKGROUND

Plaintiff filed his first complaint in this case on November 13, 2023. (Doc. No. 1.) In it, he brought a single cause of action under 42 U.S.C. § 1983, alleging that his due process rights under the 14th Amendment were violated when the Colorado Court of Appeals denied his postconviction petition seeking access to evidence for additional DNA testing. (*Id.* at ¶ 46.) Plaintiff sought both declaratory relief finding that the acts of Defendants violated his due process rights and injunctive relief requiring Defendants to provide him access to certain evidence for DNA testing. (*Id.* at ¶ 64.) On January 19, 2024, Defendants Alexis King and Reggie Marinelli filed a motion to dismiss Plaintiff's complaint. (Doc. No. 27.) On January 23, 2024, Defendants Alex Jameson and Richard Tewes also filed a motion to dismiss. (Doc. No. 28). Both of these motions were denied as moot in light of the amended complaint Plaintiff filed on February 9, 2024. (Doc. Nos. 39; 40.) In his amended complaint, Plaintiff did not change the cause of action or the relief he was seeking. (Doc. No. 39.) He did, however, drop a number of defendants from the suit and add allegations regarding the constitutionality of Colorado's postconviction DNA statute. (*Id.* at 32.) The remaining Defendants each subsequently moved to dismiss the amended complaint, and these motions are before me now. (Doc. Nos. 41; 43; 47; 72.)

## APPLICABLE LAW

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), rendering them "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty.*,

632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack, the court takes the allegations in the Complaint as true; for a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995)). The burden of establishing jurisdiction always rests with the party asserting jurisdiction—here, Plaintiff. *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## DISCUSSION

### I.  The *Rooker-Feldman* Doctrine

The court begins, as it must, by determining whether it has subject matter jurisdiction. *See Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 542, 544 n.5, 555 (10th Cir. 2016) (remanding case to district court to dismiss for lack of jurisdiction where district court proceeded to assess the merits of a case based on "some generous assumptions" about jurisdiction, and emphasizing that a ruling based on incorrect assumptions about jurisdiction "is no ruling at all"). *See also Rivers v. Colorado*,

- 3 -

No. 22-cv-2922-WJM-STV, 2023 WL 5310145, at *4 (D. Colo. Aug. 17, 2023), *appeal pending* (overruling objection to magistrate judge's sua sponte recommending dismissal based on *Rooker-Feldman* doctrine). As follows, the court finds that it lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine is derived from 28 U.S.C. § 1257(a), [which] provides that only the Supreme Court has jurisdiction to hear appeals from final state-court judgments," *Suasnavas v. Stover*, 196 F. App'x 647, 652 n.3 (10th Cir. 2006) (internal quotation omitted), and gets its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074-75 (10th Cir. 2004) (footnote omitted).

The doctrine "precludes a losing party in state-court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Miller v. Deutsche Bank Nat'l Trust Co.*, 666 F.3d 1255, 1261 (10th Cir. 2012). The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

"'The type of judicial action barred by *Rooker-Feldman* [] consists of a review of the proceedings already conducted by the 'lower' tribunal to

determine whether it reached its result in accordance with law.'" *PJ ex rel Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)). "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Id.* (quoting *Bolden*, 441 F.3d at 1145). The doctrine applies where the relief sought requires the federal court to review and reject the state court judgment. *See id.* (citing *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007)); *cf. Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1238 (10th Cir. 2006) (declining to apply *Rooker-Feldman* where the federal suit would not undo the state-court judgment).

The *Rooker-Feldman* doctrine bars not only claims seeking direct review of state court judgments, but also bars claims "inextricably intertwined with" an underlying state court judgment. *Feldman*, 460 U.S. at 482 n.16, 486; *Mothershed v. Okla. ex rel. Okla. Bar Ass'n*, 390 F. App'x 779, 780 (10th Cir. 2010). A federal claim is "inextricably intertwined" with a state court judgment when a plaintiff "can only succeed if [the federal court] conclude[s] the state got it wrong and effectively reverse[s] its decision or void[s] its ruling.*" Ziankovich v. Members of Colo. Supreme Court*, No. 20-1314, 2021 WL 4047000, at *4 (10th Cir. Aug. 10, 2021) (unpublished) (citing *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006), and *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (explaining that "[t]he essential point [of the inextricably intertwined test is that] barred claims are those complaining of injuries caused by state-court judgments," meaning that "an element of the claim must be that the state-court wrongfully entered its judgment") (cleaned up). "A claim is inextricably intertwined if the state-court judgment caused, actually and proximately, the injury for which the federal-court

plaintiff seeks redress." *Tal*, 453 F.3d at 1256 (internal quotations omitted). The doctrine applies "after the state proceedings ended." *Exxon Mobil*, 544 U.S. at 291. "[I]f a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended." *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006) (internal quotation marks omitted). This is true whether or not other procedures remain pending in the case. *Id.* ("Although the state proceedings have not 'ended' in a general sense because the accounting and distribution of the proceeds of the sheriff's sale remain, a final judgment on Count II that was no longer appealable would have invoked *Rooker–Feldman's* jurisdictional bar"). *See also Wideman v. Colorado*, No. 06-cv-001423-WDM-CBS, 2007 WL 757639, at *2 (D. Colo. Mar. 8, 2007) (citing *Bear*, *Rooker-Feldman* doctrine applied despite state-court retaining jurisdiction over paternity and child custody cases until the child would become an adult). *See also Green v. Cnty. Ct. of City and Cnty. of Denver*, No. 10-cv-02876- BNB, 2011 WL 290645, at *2 (D. Colo. Jan. 26, 2011) (noting the plaintiff's appeal from state court judgment had been dismissed and holding that claims challenging plaintiff's treatment during proceedings in Denver County Court were barred by *Rooker-Feldman*: plaintiff's "claims for damages are inextricably intertwined with the state court judgment because in order for [plaintiff] to prevail in this action the Court would be required to review and reject the state-court judgment").

## II. Plaintiff's Claims are Jurisdictionally Barred

Evaluating Plaintiff's § 1983 claims pursuant to these standards, it is clear that Plaintiff's federal suit is fundamentally premised on the notion that his state court judgement under the Colorado post-conviction DNA statute was erroneous. This suit and Plaintiff's previous state court judgment are therefore inextricably intertwined.

In its opinion denying Plaintiff's petition under 18-1-411 to -417, C.R.S. 2021, the Colorado Court of Appeals emphasized that Plaintiff failed to adequately allege, as required by the statute, that favorable results of DNA testing would demonstrate his actual innocence. (Doc. No. 73 at 4.) In reaching this conclusion, the court emphasized that prosecutors had introduced evidence at trial indicating that two pubic hairs found at the crime scene were matches for his DNA profile. Even if Plaintiff could prove, as he now argues, that one of these samples resulted in a false positive due to contamination that occurred during a break in the chain of custody, "that still wouldn't negate the other sample from the scene that also matched his DNA profile." (*Id.* at 11.) Additionally, even if Plaintiff's petition for further DNA testing yielded favorable results, the Court of Appeals reasoned that this would not "negate the other evidence that supported the jury's verdict – including, in particular, evidence that he was in the vicinity of the crime scene at the time of the crimes, that his body size and features matched those of the perpetrator, that he was wearing clothes that fit the description of those worn by the perpetrator, and that the adult victim recognized his voice." (*Id.*)

Plaintiff's amended complaint reads primarily as a direct challenge to these findings made by the Colorado Court of Appeals. Indeed, it is replete with allegations that additional testing would be sufficient to prove his "actual and factual innocence." (Doc. No. 39 at ¶¶ 1, 2, 3, 5, 6, 7, 8, 9, 19, 36, 38, 42, 49, 52, 56.)  It is also replete with allegations regarding the sufficiency of the evidence that was used to convict him at trial. Plaintiff repeatedly alleges, for example, that he "was prosecuted and tried based on fabricated and false evidence." (Doc. No. 39 at ¶¶ 2, 18, 19, 34, 49, 63.) He also alleges that the evidence used to convict him is suspect because the Colorado Bureau of Investigation recently found

that one of the forensic scientists working on his case had manipulated data in the DNA testing process, calling into question the integrity of all of her work. (*Id.* at ¶¶ 20, 61.) Plaintiff also emphasizes that DNA testing has advanced significantly since the time of his conviction and that it is now far more reliable than it used to be, casting doubt on the DNA results that were used to convict him some twenty-plus years ago. (*Id.* at ¶¶ 25, 31.)

While I take no stance here on the merit of Plaintiff's claims about the reliability of the evidence that was used to support his underlying conviction, I do note that the entire gist of the complaint is to suggest that the Colorado Court of Appeals made an incorrect determination when it found that a favorable DNA test result would not have been enough to make a showing of actual innocence. By impugning the other evidence used against him at trial, Plaintiff clearly intends to establish the inference that a favorable DNA test result would show he is an innocent man. These facts, combined with Plaintiff's request for injunctive relief requiring the Defendants to conduct the same DNA testing he sought in his state court suit, suggest to me that Plaintiff essentially wants to relitigate an issue that was already decided in state court, and that I am therefore barred from assuming jurisdiction under the *Rooker-Feldman* doctrine.

Though Plaintiff summarily notes in a single paragraph of his 64-paragraph Complaint that "the Colorado post-conviction DNA statute is unconstitutional as construed by the Colorado courts", this threadbare assertion of a Constitutional cause of action is insufficient to overcome

a motion to dismiss.[1] (*Id*. at ¶ 32.) While it is true that a complaint need not be "a model of the careful drafter's art" or "pin plaintiff's claim for relief to a precise legal theory", it is also well-established that conclusory allegations are insufficient at this stage of litigation. *Skinner*, 562 U.S. at 530 (2011); *see generally Aschroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff's recitation of this conclusory statement is not enough to overcome the obvious fact that the Plaintiff asks this court to revisit a state court judgment. Indeed, Plaintiff's elaboration on this statement belies the fact that he is actually challenging the *judicial application* of the DNA statute, not its facial constitutionality. Specifically, Plaintiff argues that "the current mechanism for DNA testing under C.R.S. 18-1-413 allows an innocent citizen to be denied access to DNA evidence when a judicial official uses a false narrative to substantiate a deficiency in the pleadings." (*Id*. at ¶ 54.) This is significant as it clearly indicates that Plaintiff's primary objection to the DNA statute has to do with the way state judicial officials chose to apply the law in his case, not with the constitutionality of the law itself. As Defendant Woods notes, "the basis of Plaintiff's First Amended Complaint is that Colorado state courts are denying him procedural due process in their <u>application</u> of the post-conviction DNA statute and that the statute, <u>as applied in this instance</u>, is unconstitutional." (Doc. No. 68 at 8.) Challenges of this sort, by contrast to facial constitutional challenges, amount to

---

[1] Notably, this is precisely the claim that was not barred by *Rooker-Feldman* in *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). There, however, counsel for Skinner elaborated that the Texas postconviction DNA statute was unconstitutional because it was construed by the state courts to "completely foreclose any prisoner who could have sought DNA testing prior to trial, but did not, from seeking testing" postconviction. *Id*. Here, on the other hand, Plaintiff offers no substantive arguments supporting his assertion that the Colorado postconviction DNA statute is unconstitutional.

jurisdictionally-barred disputations of state court judicial determina-tions. *See Cooper v. Ramos*, 704 F.3d 772, 781 (9th Cir. 2012) ("Because Cooper in fact challenges the particular outcome in his state case, it is immaterial that Cooper frames his federal complaint as a constitutional challenge to the state court's decision, rather than as a direct appeal of that decision.") (cleaned up); *Wade v. Monroe Cnty. Dist. Attorney*, 800 Fed. App'x. 114, 119 (3d Cir. 2020) (holding that *Rooker-Feldman* barred claim where plaintiff was challenging the state court's "particular inter-pretation of the DNA statute and application of the statute to him"); *McKithen v. Brown*, 626 F.3d 143, 154-55 (2d Cir. 2010) (holding that *Rooker-Feldman* barred claim that "state court incorrectly and uncon-stitutionally interpreted the [New York DNA] statute by not assuming exculpatory results"). Plaintiff's suit is therefore the quintessential type which is encompassed by the *Rooker-Feldman* doctrine.

I am aware that the Supreme Court and the Tenth Circuit have re-cently reversed lower courts for employing the *Rooker-Feldman* doctrine too liberally. *See, e.g., Reed v. Goertz*, 598 U.S. 230, 237 (2023). The facts of those cases, however, are readily distinguishable from the facts of this one. In *McGowan v. Wal-Mart Stores*, the Tenth Circuit found that the District of Colorado improperly invoked the *Rooker-Feldman* doctrine because "the doctrine applies only to claims resting on allegations in-volving [] state-court proceedings" and the plaintiff's federal lawsuit did "not even mention the state-court lawsuit." 757 Fed. App'x. 786, 787 (10th Cir. 2019). Similarly, in *Huey v. Kunzweiler for Tulsa Cnty. State*, the Tenth Circuit found that the Northern District of Oklahoma was incorrect to construe the plaintiff's complaint as a challenge to a state court judgment, noting that "Mr. Huey's complaint does not even discuss his motion or the state-courts' disposition of the motion…[and] therefore cannot be fairly read as seeking review and reversal of state-court

decisions that he does not even discuss." 847 Fed. App'x. 530, 533 (10th Cir. 2021). Here, by contrast, the state court lawsuit is mentioned throughout the complaint and is a focal point of the Plaintiff's arguments.

In *Drexler v. Spahn*, the Tenth Circuit similarly found that this court had improperly invoked the *Rooker-Feldman* doctrine with respect to the plaintiff's claim that a state statute underlying a protection order was unconstitutional. No. 21-1368, 2022 WL 17333076, at *4 (10th Cir. Nov. 30, 2022). It noted that the plaintiff challenged the constitutionality of the state statutes and specifically alleged that the "Colorado protection order statutes are substantially overbroad and vague." *Id*. Plaintiff here, by contrast, does not offer any reason why the Colorado post-conviction statute is facially unconstitutional. Instead, he only challenges how state court judges chose to apply the statute to the facts of his case.

In *Graff v. Aberdeen Enterprizes, II, Inc.*, the Tenth Circuit again found that the Northern District of Oklahoma had erred in applying the *Rooker-Feldman* doctrine. 65 F.4th 500, 518 (10th Cir. 2023). Specifically, it found that the plaintiffs' claims were not properly barred by the district court because the plaintiffs were not challenging state court judgments themselves but were instead challenging the constitutionality of the debt-collection practices that were used to enforce them. *Id*. Here, on the other hand, Plaintiff specifically takes issue with the state court judgment itself.

Considering these facts and record as a whole, it is clear that Plaintiff satisfies all the requirements of the *Rooker-Feldman* doctrine: he is a state court loser, he complains of injuries caused by a state court judgment, this judgment was rendered before federal proceedings

commenced, and Plaintiff invites federal review of this judgment. Plaintiff's suit must therefore be dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

It is ORDERED that:

Defendants' Motions to Dismiss (Doc. Nos. 41; 43; 47; 72) are GRANTED; and Plaintiff's Amended Complaint (Doc. No. 39) is DISMISSED WITHOUT PREJUDICE.

It is further ordered that Plaintiff's Motion for a Preliminary Injunction (Doc. No. 48) is DENIED as moot.

DATED: April 19, 2024         BY THE COURT:

Daniel D. Domenico
United States District Judge